GIGOS ET AL. *v.* COCHRAN ET AL.

SPECIFIC PERFORMANCE.—*Contract to Convey Real Estate.*—*Uncertainty of Description.*—*Pleading.*—*Demurrer.*—A written contract for the conveyance of real estate, which is therein described as "one lot of ground lying and being the corner lot of the south-east side of" a certain railroad and a certain highway, "to be fifty feet front and running back one hundred feet", is void for uncertainty in such description. And a complaint for the specific performance of such contract, alleging no mistake in, and praying for no reformation of, such description, though alleging the payment of the purchase-money for such real estate by the plaintiff, and his possession and improvement thereof, is bad on demurrer for want of sufficient facts.

From the Ripley Circuit Court.

*E. P. Ferris,* for appellants.

HOWK, J.—In this action, the appellants were the plaintiffs, and the appellees were the defendants, in the court below. All of the appellants' complaint, which is set out in the record, is contained in what is called an amended third paragraph of the complaint.

In this amended third paragraph, it is alleged, in substance, that one Blossius Gigos, on the —— day of ——, 1860, departed this life leaving the appellants as his only surviving heirs and representatives; that on the 9th day of August, 1853, George W. Cochran was the owner of the north-west quarter of section twenty-two, in town eight, north, of range eleven, east, in Ripley county, Indiana; that the Ohio and Mississippi railroad had then just been located through said quarter section, crossing the Madison plank road, which ran north and south through said quarter section; that the intersection of the said roads was near the center of said quarter section, east and west, and near the north side of said quarter section, and where the town of Osgood is now situate; that said George W. Cochran was then about to lay out a town at that point, and for the purpose of inducing persons to

VOL. LIV.—38

locate there, he appointed said William Duncan his agent
to sell lots at said railroad and plank road crossing; that
John Ewing, Sr., on said day, purchased the corner lot of
ground of said Cochran, by said Duncan, his agent, to be
fifty feet front on said plank road, and running back one
hundred feet, making the south-west corner of said lot
where the extreme south-east side of the railroad bed in-
tersected the east side of the plank road; that said Ewing
pointed out the ground, and agreed with said Duncan
that it should be the lot on the east side of the plank road
and on the south-east side of said railroad, which ran
north-east and south-west where it crossed said plank
road; that said lot was a corner lot, and said Ewing paid
said Cochran twenty dollars in gold, the price agreed
upon for said lot, and went upon and took possession of
said lot so pointed out; that said William Duncan, as
agent of said Cochran, gave said Ewing a writing, a copy
of which was filed with and made part of said paragraph;
that the location of said lot, as to the railroad, was cor-
rectly described, but was not described at all as to the
plank road, only as a corner lot, as that road ran north and
south, where it crossed the railroad; that this was the
only corner lot said Cochran owned at that time on the
south-east side of said railroad, as no town had then been
laid out, and the plank road was the only road or street
in that locality or quarter section of land, except along
the north line thereof; that said Cochran gave a receipt
to said Ewing for said purchase money, describing said
lot as aforesaid, and said receipt had been lost, and there-
fore a copy thereof could not be filed with said complaint;
that after the payment of the purchase-money, and the
taking possession by said John Ewing, Sr., the said Ewing
sold and assigned his interest in said lot and bond to said
Blossius Gigos, a copy of which assignment was filed with
and made part of said complaint; that said sale and as-
signment to said Gigos were made on the —— day of Sep-

tember, 1853; that said Gigos went upon, took possession
of, made improvements and built a house on said lot; that
in 1857, said Cochran, after he had received the money
for said lot and knew all said facts, laid out the town of
Osgood at said plank road and railroad crossing, and sur-
veyed and marked off the same into lots, as shown by the
plat of said town of Osgood, as laid out by said Cochran
and duly recorded in the recorder's office of said Ripley
county, in said quarter section and that fifty feet fronting
on Buckeye street and extending back from the plank
road, now Buckeye street, across lots numbers one hundred
and seventeen and one hundred and eighteen in said town
of Osgood, one hundred feet, and the same was done by
said Cochran to cheat and defraud the appellants; and the
better to carry out said fraud he sold said lots numbers one
hundred and seventeen and one hundred and eighteen,
conveying the lot in controversy, on May 19th, 1858, to
Rhoda Levi, who at the time had notice of all said facts,
and was the wife of Isaac Levi, and gave her a quit-
claim deed to said premises, reserving a vendor's lien
thereon for one hundred and fifty dollars; that in Feb-
ruary, 1861, said Cochran foreclosed his said vendor's lien
against the said Rhoda and Isaac Levi only; and that on
the —— day of ————, 1861, said lot was sold at sheriff's
sale, on said judgment, for twenty-six dollars and twelve
cents, to James H. Cravens, the agent of said George W.
Cochran, with full notice by said Cochran and Cravens
of all said facts; that the appellees, William, James and
Hardin Duncan, were in the possession of said fifty feet
by one hundred feet deep, belonging to appellants, and
being a part of said lots one hundred and seventeen and
one hundred and eighteen, in said town of Osgood, and
being the same land sold by said Cochran to said John
Ewing, who sold and assigned his interest to Blossius
Gigos, and by virtue of which facts appellants, as the
heirs of said Blossius Gigos, deceased, were the equitable

owners of said land; that the title of the said Duncan was to the appellants unknown, but they were claiming to be the owners by purchase from said Cravens, and that each of them at the time of their purchase had full notice of all said facts. And appellants averred, that the purchase-money of said lot was all paid at the time of the purchase, and that said Blossius Gigos had demanded of said George W. Cochran, a deed of said premises, when he obtained the interest of said John Ewing, Sr., therein; that said Ewing and said Gigos had each performed his part of said title-bond, and was ready to comply with all its conditions within twelve months from its date, but were prevented by the failure of said Cochran to execute a deed of said lot, which he had refused and still refused to do. And the appellants asked that the appellees, William, James and Hardin Duncan, might be compelled to disclose their title and claim to said premises, and that those who hold the legal title, if any of them did, might be required to convey to appellants their interest in the same; and appellants averred that all the appellees had acquired their title to said premises subsequent to the title of the appellants. And the appellants asked, that, as against the appellees, their title, in and to said premises, might be quieted, and that the appellees, or any one under them, might be enjoined from setting up any title to any portion of said premises claimed by the appellants, and for other proper relief.

The copy of the writing, executed by William Duncan, agent for George W. Cochran, to John Ewing, Sr., which copy was made part of appellants' complaint, was in these words:

" State of Indiana, Ripley county :

" I, William Duncan, agent for George W. Cochran, have bargained and sold to John Ewing, Sr., one lot of ground lying and being the corner lot of the south-east side of the Ohio and Mississippi railroad, and of the Madison

Gigos *el al. v.* Cochran *et al.*

plank road, to be fifty feet front, and running back one hundred feet, this the ninth day of August, 1853.

" N. B.—The said Ewing binds himself to build a house on said lot within twelve months, if the deed shall be made in time to do so, and further, if Ewing sells said lot, the purchaser is bound as Ewing is bound.

(Signed)                         " WILLIAM DUNCAN.'

The copy of the assignment of said writing, which copy was also made a part of appellants' complaint, was as follows:

"I assign all my right to"——.

(Signed)                         "JOHN EWING, SR."

The appellees, George W. Cochran, and William, James and Hardin Duncan, each for himself, demurred separately to the amended third paragraph of appellants' complaint, for the want of sufficient facts therein to constitute a cause of action. This demurrer was sustained by the court below, and to this decision appellants excepted, and, declining to amend further, judgment was rendered against them, in favor of said appellees, on said demurrer, from which judgment this appeal is now here prosecuted.

In this court, the only alleged error, assigned by appellants, is, that the court below erred in sustaining appellees' demurrer to the amended third paragraph of appellants' complaint.

It is very evident that the description of the land sold, as set out in the writing alleged to have been executed by William Duncan, agent of or for George W. Cochran, to John Ewing, Sr., is absolutely void for uncertainty. No surveyor could locate the land sold, from the description thereof in said writing, for the reason that it is impossible to tell from the language used, whether the "fifty feet front", of the land in question, fronted on the Ohio and Mississippi railroad or on the Madison plank road, or with what width or at what angle it ran back one hun-

dred feet from the road, on which it fronted. The appellants have not alleged, in the amended third paragraph of their complaint, that there was any mistake in the description of the land sold, as the same was described in the writing sued upon; nor have they sought, in or by said paragraph, to have the said writing reformed in any particular. But, counting as they did upon an instrument of writing, which was void upon its face for uncertainty in the description it contained of the land sold, the appellants have sought, by their amended complaint, to · enforce the specific performance of such void writing, without even an allegation of any mistake therein, or a simple demand for its reformation.

The specific performance of such a contract as the one now under consideration, can not be enforced as it was written, without correction or reformation, by the judgment or decree of any court. If there were mistakes in the contract, upon the proper averments, sustained by sufficient evidence, such mistakes might be corrected; and then, in a proper case, a judgment for specific performance might be obtained. And under our code of practice, a party may, by proper allegations in his complaint and upon sufficient evidence, obtain the correction of mistakes in a written contract, and also the specific performance of such contract, in one and the same action. 2 R. S. 1876, p. 70, sec. 71.

Appellants' amended third paragraph of their complaint was radically and fatally defective, and the court below committed no error in sustaining appellees' demurrer to such amended paragraph.

The judgment of the court below is affirmed, at appellants' costs.