Halstead *et al. v.* The Board of Comm'rs of Lake County.

HALSTEAD ET AL. *v.* THE BOARD OF COMM'RS OF LAKE COUNTY.

| 56 | 363 |
| 141 | 331 |
| 53 | 333 |
| 171 | 363 |

MORTGAGE.—*Conveyance.—Description of Real Estate.*—As against the mortgagor, the description of real estate conveyed by a mortgage may be sufficient to convey such realty, and yet, unaided by proper averments in the complaint thereon, be insufficient to authorize a decree for foreclosure.

SAME.—*Void Description.—Pleading.*—Where such description is so indefinite as to render the mortgage void, no averments in such complaint can make valid a decree rendered thereon.

SAME.—*Defective Description.—Averments Aiding.*—Where such description is sufficient to convey such realty, though insufficient, unaided, to support a decree, the same may be cured by proper averments in the complaint.

SAME.—*Foreclosure.—Judgment.*—Where, in such case, proper evidence in support of such averments is introduced, the court, in its decree, may specify the true boundaries of such realty.

SAME.—*County Commissioners.—Purchase of Mortgage.—Loan.*—Where the board of commissioners of a county, in regular session, as a loan of money, lying idle, belonging to a fund of such county to be used for building purposes, purchase and take an assignment of a mortgage on real estate, such transaction is not rendered void, because no record thereof has been made.

SAME.—*Building Fund.—Power of County Board.—Statute Construed.*—The building fund of a county is "property of the county," within the meaning of section 13 of the act of June 17th, 1852, (1 R. S. 1876, p. 348,) giving to a board of commissioners power at their meetings, to make orders respecting such property.

SAME.—*Curative Statute.*—Where an assignment of such mortgage has been so taken to their county by a board of commissioners, such act is validated by the act of March 9th, 1875, (Acts 1875, Reg. Ses., p. 93,) entitled "An act to legalize the acts of county commissioners;" etc.

PRACTICE.—*Supreme Court.—Striking out Part of Pleading.*—The action of the circuit court in refusing to strike out part of a pleading is not available as error, on appeal to the Supreme Court.

SAME.—*Ground of Objection.*—The Supreme Court, on appeal, will not consider objections made to the proceedings of the circuit court, unless the grounds thereof are pointed out.

ALIEN.—*Conveyance.—Mortgage.*—Where no inquest has been instituted, an alien may convey or mortgage land owned by him in this State.

From the Lake Circuit Court.

*M. Wood* and *T. J. Wood,* for appellants.

*E. C. Field,* for appellee.

PERKINS, C. J.—Suit by the appellee, assignee of the payee, who was a Canadian, to foreclose a mortgage upon the following real estate, in Lake County, Indiana, viz.: " Commencing at the south-west corner of lot No. 16, in original plat of Lowell; thence two chains twenty-five links south; thence north, seventy-five degrees west, one chain, across street to place of beginning [of the line of the land to be hereby mortgaged]; thence north, seventy-five degrees west, ten chains thirteen links; thence north, twenty-nine degrees west, four chains and fifty links; thence easterly one chain eighty-five links to the mill-race; thence north-easterly, along the race, four chains and fifty links; thence north-westerly, on the line of Castle's lot, three chains seventy-five links; thence north-easterly two chains forty links; thence north, toward centre of north line of said eighty-acre lot that Lowell is on, to within two chains seventy-five links of said north line; thence east to mill-pond; thence along the pond to north line; thence east to north-east corner of said eighty-acre lot; thence south across the pond at high-water mark; thence westerly and southerly, along pond and race, at high-water mark, to a point fifty links west of south-west corner of lot number seven, in original plat of Lowell; thence two chains to west side Mill street; thence south three chains eighty-five links to place of beginning. Also, all the land covered by the Lowell mill-pond, to high-water mark, that Halstead has a deed for. Also, the saw-mill known as the Foley mill, with ten acres of land most conveniently situated to accommodate said mill and yard, with the dwelling-house and improvements on said ten acres of land, situated on the south-east quarter of section thirty-six, township thirty-four north, of range nine west. Also, all of the land covered by the Foley mill-pond, to high-water mark, that is owned by Halstead to this date. Also, the one-half acre of land and

head-gates, and right of way of the ditch, and privileges of Cedar Lake. To secure the payment," etc.

It is averred in the complaint, "that a mistake was made in the description of the parcel of land first described in said mortgage, in this, that after the words, 'to the place of beginning,' where they first occur, there should have been added the words, 'of the line of the land to be hereby mortgaged,' so that it would read thus: 'to the place of beginning of the line of the land to be hereby mortgaged;' that the points and courses thereinbefore mentioned were merely for the purpose of fixing the point of the beginning of the description of the land intended to be mortgaged by said mortgagor, and that the words, 'to the place of beginning,' where they last occur in said description, refer to the said point where the description of the land intended to be mortgaged begins; that after the words, 'thence along the pond to the north line,' there should be added the words, 'of said eighty-acre lot,' so that the same will read thus: 'thence along the pond to the north line of said eighty-acre lot;' and that in the words, 'thence two chains to west side of Mill·street,' the word 'east' after the word 'thence' was, by mistake, omitted; that the same should have been written thus: 'thence east two chains to west side of Mill street.'"

It is further averred in the complaint, "that, at and before the execution of said mortgage, said mortgagors were in possession of the land described in the mortgage, with said corrections of the said mistakes, the said mortgagors claiming to be the owners thereof; and the parties thereto intended to, and believed the same was included in said mortgage."

It is further averred in the complaint, "that, at and before the execution of said mortgage, there was then, and thence hitherto has been, and now is, upon said parcel of land first mentioned and described in said mortgage, a flour and grist mill, propelled by water-power;

that there was a ditch extending from some point in a northerly direction from said mill to or near to it, constructed and used for the purpose of carrying water from Cedar Lake to said mill, to propel the machinery thereof; that said ditch and the right of way therefor, together with head-gates and the land therefor, were then in the possession of said mortgagors, and they then claimed to own the same; that said ditch, right of way and head-gates were necessary and appurtenant to said mill, and that the words, 'also, the one-half acre of land, and head-gates, and right of way of the ditch, and privileges of Cedar Lake,' said lands, head-gates, right of way and ditch and privileges of carrying the water to said mill as aforesaid, and said appurtenances, were intended to be, and are, included in said mortgage."

The mortgage was executed June 23d, 1868, became due June 23d, 1871, and was assigned to the board August 7th, 1872. As the reason for the purchase of the mortgage, it is averred in the complaint, " that the board of commissioners had on hand a sum of money, which had been levied and collected as a building fund for the erection of a court-house and jail for said county; that said fund was not sufficient, in the judgment of the board, to enable it to enter upon the erection of said buildings, and that the same was idle in its hands," etc.; that, with the concurrence of the mortgagors, who were at the time being pressed by the mortgagee for payment, the board advanced the money due on the mortgage to the mortgagee, and took from him an assignment of the same, etc., with the understanding that time would be given the mortgagors.

Other allegations of the complaint we do not deem it necessary to set out. It contained proper prayers for relief, etc.

The appellants appeared, and moved to strike out the entire description of lands contained in the complaint; also, to strike out the mortgage; and, further, to strike out

the following parts of the description of the land, viz.: "Also, the saw-mill known as the Foley mill, with ten acres of land most conveniently situated to accommodate said mill and yard, with the dwelling-house and improvements on the said ten acres of land, situated on the southwest quarter of section thirty-six, township thirty-four north, of range nine west. Also, all the land covered by the Foley mill-pond, to high-water mark, that is owned by Halstead to this date. Also, all the land covered by the Lowell mill-pond, to high-water mark, that Halstead had a deed for."

The court overruled the motion to strike out, and exception was taken.

A demurrer was filed to the complaint, on the ground that it did not contain facts constituting a cause of action. It was overruled, and exception taken.

Answer:

First. The general denial.

Second. Admitting the purchase of the mortgage, and payment of the money out of the court-house and jail building fund, but denying the power of the commissioners to make the purchase.

The third paragraph was as follows:

"The defendants further aver, that the plaintiff" (the appellee) " made the following orders, which appear upon the records, on page 137, and embraced in order number 18; and said order, after reciting other things, says: 'and ten cents on each one hundred dollars' valuation, for building purposes.'

"That afterward said plaintiff made another independent order, as follows, viz.:

"'ORDER No. 34.

"'The board orders, that the auditor loan the fund known as the building fund, on good security, at ten per cent. *per annum,* to be loaned for one year, and if not needed when due, and the parties wish it, to continue the loan.'

" Said order will be found upon Commissioners Record, p. 269.

" The defendants aver, that the plaintiff" (appellee), "by virtue of said orders, had no right to impose and collect said tax, and that said orders are illegal and void. That, by virtue of order number 18, a tax of ten cents on the hundred dollars' valuation was imposed and collected, which amounted to several thousand dollars, and the same lay in the treasury of said county; that the defendants, being the owners of a certain water-mill property in the town of Lowell, in said county, executed a mortgage on the same to secure the note mentioned in the plaintiff's complaint, and that said note and mortgage are the identical note and mortgage the defendants executed to ——, copies of which appear in the plaintiff's complaint; that said plaintiff" (appellee) " and its agents took said building fund, deposited in the county treasury as aforesaid, and with the same purchased the said note and mortgage from said mortgagee, and took possession of the same, and claim to be the owner thereof.

" The defendants aver:

" 1. That said order No. 18 is illegal and void.

" 2. That said order 34 is illegal and void.

" 3. That said tax collected was an illegal tax, and the money derived therefrom did not belong to said county, and said plaintiff and its agents had no right to, and could not legally, use the same for any such purpose.

" 4. That said board had no power to purchase said note and mortgage, and that the whole proceeding was null and void, and vested no right to said note and mortgage in the plaintiff."

A demurrer to the second and third paragraphs of answer was sustained, and exception taken. Thereupon the cause was submitted to the court for trial, upon the general issue. The court found for the plaintiff (appellee), and rendered a decree, as follows:

The court finds, that there is due the plaintiff on " said

note, in said complaint mentioned, the sum of three thousand four hundred and sixty dollars, and that the said mortgage in said complaint mentioned was executed to secure said note; and that the beginning and conclusion of the parcel or tract of land, first described in said mortgage, was and is at a point one chain west of a point two chains and twenty-five links south of the south-west corner of lot number sixteen, in the original plat of Lowell; that the following description in said mortgage, to wit: 'ten acres of land, most conveniently situated to accommodate said mill and yard,' is void. It is therefore adjudged and decreed by the court, that the plaintiff do recover of the defendants the sum of three thousand four hundred and sixty dollars, without relief from valuation or appraisement laws of the State of Indiana, and that the mortgage given to secure the same be foreclosed, and the lands therein described, to wit, commencing at a point one chain west of a point two chains and twenty-five links south of the south-west corner of lot number sixteen, in the original plat of Lowell; thence north, seventy-five degrees west, ten chains and thirteen links; thence north, twenty-nine degrees west, four chains and fifty links; thence easterly one chain and eighty-five links to the mill-race; thence north-easterly, along the race, four chains and fifty links; thence north-westerly, on the line of Castle's lot, three chains and seventy-five links; thence north-easterly two chains and forty links; thence north, toward the centre of north line of said eighty-acre lot that Lowell is on, to within two chains and seventy-five links of said north line; thence east to the mill pond; thence, along the pond, to the north line; thence east to the north-east corner of said eighty-acre lot; thence south across the pond at high-water mark; thence westerly and southerly, along the pond and race, at high-water mark, to a point fifty links west of south-west corner of lot number seven, in original plat of Lowell; thence two chains to the west side Mill

street; thence south three chains and eighty-five links to the place of beginning.

"Also, all the land covered by the Lowell mill-pond, to high-water mark, that Halstead ever had a deed for; also, the said mill, known as the Foley Mill. Also, all the land covered by the Foley mill-pond, to high-water mark, that was owned by Halstead; also, the one-half acre of land and head-gates, and right of way of the ditch, and privileges of Cedar Lake, all in Lake county, Indiana."

The defendants objected generally to the decree, but pointed out no specific defect or error in it.

They then moved for a new trial, for the following reasons:

1.   The judgment is contrary to law;

2.   It is contrary to the evidence;

3.   The admission of improper evidence; and,

4.   The finding and judgment are not sustained by the evidence.

The motion was overruled, exceptions taken, and bill of exceptions filed.

The errors assigned in this court are:

1st.   The court erred in overruling the motion for a new trial;

2d.   The court erred in refusing to strike out parts of the complaint;

3d.   The court erred in overruling the demurrer to the complaint.

4th.   The court erred in sustaining the demurrer to the answer; and,

5th.   The court erred in overruling the objection to the decree.

It will be observed that the board received the assignment of the note and mortgage in suit on the 7th day of August, 1872. This suit for their collection was instituted in September, 1875.

On the 9th day of March, 1875, the following act of the Legislature of this State received the executive approval.

It is entitled "An act to legalize the acts of county commissioners in loaning money and purchasing and conveying real estate, and to authorize them to sell and convey lands heretofore conveyed to said county, and take obligations and securities therefor."

" Whereas, The boards of county commissioners, of the various counties of this State, loaned some of the money belonging to their respective counties, which had been levied and collected as a building fund for the purpose of enabling such boards to erect public buildings for the use of said counties, and took notes and mortgages from the borrowers; and

" Whereas, Said commissioners have, in some instances, purchased real estate and received deeds of conveyance therefor to said counties, or the boards of commissioners thereof; and

" Whereas, Doubts have been expressed as to the power of the said boards of county commissioners to make such loans or purchases, therefore,

" Sec. 1. Be it enacted by the General Assembly of the State of Indiana, That any and all loans of money made by the board of county commissioners of any county in this State, or by any agent of such board, and all notes, bills, bonds, mortgages, or other securities taken therefor, are hereby legalized and made valid, and the parties or persons executing the same shall be bound thereby, and liable thereon, and any and all actions may be maintained thereon the same as if the said board had been fully authorized to make said loan and receive said notes, bills, bonds, mortgages or other security. No disability or want of power to make such contracts by said board shall defeat a recovery on any contract for such loan, or to enforce any security therefor.

" Sec. 2. All purchases of real estate heretofore made by the board of county commissioners of any county, and all conveyances made to, or by such board, or by or under its authority, for lands so purchased, and all notes, bills,

bonds, mortgages, or other securities taken therefor, are hereby legalized and made valid, the same as if such board had been fully authorized and empowered to make such purchases and sales, and receive and make such conveyances, and receive and accept such notes, bills, bonds, mortgages, and other securities. And such board is hereby authorized and empowered to sell and convey, or cause to be conveyed, any and all real estate, so purchased as aforesaid, upon such terms as may be agreed upon by the parties, and all such sales and conveyances, and all notes, bills, bonds, mortgages, and other securities taken for, or to secure any part of the purchase-money, shall be valid.

" Sec. 3. It is declared that an emergency exists, that this act should take effect immediately, and the same shall be in force from and after its passage." Acts 1875, Reg. Ses., p. 93.

In examining this case, we may properly enquire, whether the mortgage is a valid lien upon the land against the mortgagors. The enquiry is limited to them, because it does not appear by the record that any subsequent encumbrancers, if, indeed, there are such, are seeking to enforce any liens upon the property.

It is not denied that the mortgage was executed in good faith, and for a valuable consideration. The only objection urged to it is, that it does not describe the mortgaged premises with sufficient certainty.

It is well settled, that a description, in the mortgage, of the property mortgaged, may be sufficient to convey the the property, as against the mortgagors, and yet not be sufficiently certain, if copied literally into a complaint to foreclose the mortgage, to render the complaint good, without additional averments. Thus, in *Whittelsey* v. *Beall*, 5 Blackf. 143, the description in the mortgage was as follows:

" That certain tract or parcel of land containing three hundred acres, lying and being in the county of Knox

and State of Indiana, about four miles north-east of Vincennes and adjoining lands of David M'Cord and others, being the same tract of land that was conveyed to said Isaac N. Whittelsey by Benjamin Tomlinson and John Ross, on the 25th day of May, 1837."

The complaint contains no further description of the land.

A demurrer to the complaint was overruled. On appeal, the court say:

" The objection urged to the bill is, that the description of the land is too indefinite to authorize the court to make a decree ordering the sale of it.

" We think the objection well taken. We do not mean to say that the description is so vague as to make the deed inoperative. It may be sufficient to convey the land. That point however is not before us. But we think the bill" (complaint) " is defective in not so describing the land, that the officer of the court may know on what premises to enter to execute the order of the court. * *

" The bill is defective in not describing by metes and bounds, by name, or otherwise, the premises to be sold; and the decree must for that reason be reversed."

This distinction has been observed in subsequent cases. *Magee* v. *Sanderson*, 10 Ind. 261; *Nolte* v. *Libbert*, 34 Ind. 163; *Bowen* v. *Wood*, 35 Ind. 268; *White* v. *Hyatt*, 40 Ind. 385; *Struble* v. *Neighbert*, 41 Ind. 344; *Duke* v. *Strickland*, 43 Ind. 494; *Ebberle* v. *Mayer*, 51 Ind. 235; *Busenbarke* v. *Ramey*, 53 Ind. 499; *Rosenbaum* v. *Schmidt*, 54 Ind. 231; *Gigos* v. *Cochran*, 54 Ind. 593.

We think it may be stated thus:

When the description of the mortgaged property, contained in the mortgage, is so indefinite as to render the mortgage inoperative and void, no allegations in a complaint upon the mortgage can make such complaint good. But where there is such a description in the mortgage as will render it operative to convey the property to the mortgagee, but not so definite as to enable a third person,

in making sale of the property, (an officer for example,) to specify the exact boundaries, in such case, if the complaint upon the mortgage alleges the true boundaries, the complaint will be good; proof of the allegations may be made, and, upon such proof, the court, in its decree, may specify the true boundaries, and the officer may sell and convey accordingly.

The cases cited above furnish examples of descriptions held, by the courts, so indefinite as to be inoperative and void, and of descriptions, indefinite, but not so indefinite as to render the mortgages inoperative and void, and which might be aided by averments in the complaint. We shall not attempt to give exact tests by which the class, into which each mortgage falls, may be determined. We think the complaint in this case good, on application of the test of comparison. The mortgage being valid is a lien on the property covered by it.

But it is contended that the appellee, the board of commissioners, has no title to the mortgage. This is insisted upon on two grounds:

1. That the board of commissioners had no power to receive the mortgage by assignment.

2. That, if it had such power, the assignment taken is void, because the transaction in which it was taken was not made a matter of record.

We will first examine this latter ground. The court might have found from the evidence, that the transaction in which the mortgage was assigned to the board, was as follows: The mortgage was due, and the mortgagee was pressing for payment. It was during a regular session of the board of commissioners of Lake county. Two of the mortgagors went with the mortgagee to the court-house, and suggested to the county auditor that the mortgagors were in a bad fix for want of money to pay the mortgagee; that the county had on hand, lying idle, several thousand dollars of building fund, which would not be used for a long time; was lying idle, earning noth-

ing; that their mortgage to McDiarmed was drawing ten per cent., and the mortgagors wished the county to advance the money and take the mortgage. They then proceeded to the board of commissioners, where the same views were expressed, and the board, in regular session, all the members concurring, took the assignment of the mortgage, and, through the auditor and treasurer, advanced the full amount due on the mortgage, and afterward gave the mortgagors, in fact, over three years' time on the mortgage. The board of commissioners regarded it as, in fact, a loan, but, in form, it was the purchase of the mortgage. The contract of the board was not an executory one, but was executed at its making, by the acceptance of the assigned mortgage and the payment of the money.

We think the title of the board to the mortgage not void because no record of the transaction, in which it was taken, was made. In *McCabe* v. *The Board, etc.*, 46 Ind. 380, it is said: "We think it clear that the board of commissioners of a county is to be viewed as capable of acting in several capacities. It is undoubtedly true that the board is a corporation. The statute by which the board is created expressly declares, that 'such commissioners shall be considered a body corporate and politic by the name and style of,' etc., 'and as such, and in such name, may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, not inconsistent with the provisions of this act.' 1 G. & H. 248, sec. 5.

"There is as little doubt that the board is a judicial tribunal. * * *

"We do not find any case which decides that the board, when acting as a corporation merely, must enter its action of record, to make it binding upon the county, or that requires that, in proving such act, it must be proved by a record made under the direction of the board." See *Ross* v. *The City of Madison*, 1 Ind. 281; *Langsdale* v.

*Bonton,* 12 Ind. 467; *The Board, etc.,* v. *Slatter,* 52 Ind. 171; see, also, *Baker* v. *The Board, etc.,* 53 Ind. 497.

On the second ground, viz., the absence of power in the board to receive the mortgage by assignment, it may not be necessary for us, as will appear from what will be said, to decide upon the question of power. We may observe, however, that the statute of 1852, 1 R. S. 1876, p. 352, sec. 13, enacts, that " Such commissioners, in their respective counties, shall have power at their meetings: 1. To make orders respecting the property of the county in conformity to law," etc.; that the building fund was the property of the county; that it was a judicious act, viewed as a business transaction merely, to invest that fund so that it might increase; that the mortgagee in the mortgage procured with the fund is a party to this suit, and does not dispute the title of the board to the same, nor seek to recover the mortgage or the money due on it himself. Under such circumstances, it is difficult to discover any reason why the mortgagors should be heard to dispute the right of the board to re-- cover on the mortgage. See Green's Brice's Ultra Vires, 372, and *passim.* But, as we have said, it is unnecessary that we should decide this point, as the transaction of the commissioners in investing the money is clearly embraced and validated by the curative statute embodied in this opinion. It is contended that that statute does not apply to this case, because there was not technically a loan of money. But we think such a construction of the statute would, plainly, be too narrow and illiberal. It would not carry into effect the intention of the Legislature. The statute is a curative one, and remedial in its character. It was to remedy a certain mischief, and cases within the mischief should, so far as the rules of statutory construction will permit, be brought within the remedy. The mischief was, the converting of the county building fund, by the board of commissioners, upon doubtful authority,

from a dead fund in the county treasury, into a living fund, that it might increase for the benefit of the county.

It was this act of the board of commissioners, severally, in a number of the counties in the State, which the Legislature intended to cure, without regard to the particular form in which the act was done.

That we are within the power, conceded to courts in the construction of statutes, in the decision we make upon the statute involved, will appear from the following, among other, cases: *Donnell* v. *The State*, 2 Ind. 658; *Ross* v. *Faust*, 54 Ind. 471; *Gardner* v. *Jaques*, 54 Ind. 566; *The Walter A. Wood Mowing, etc., Machine Co.* v. *Caldwell*, 54 Ind. 270.

Two or three other propositions of law may be stated, and their application to objections and points made in this case will readily be perceived by the parties.

1. "The action of the court below in overruling a motion to strike out part of a pleading is not available as error on appeal to the Supreme Court." *House* v. *McKinney*, 54 Ind. 240.

2. As a general rule, it is not error in the court below to overrule objections made to proceedings in such court, where no ground on which the objections are based is pointed out. *Rosenbaum* v. *Schmidt*, 54 Ind. 231; *Bishop* v. *Welch*, 54 Ind. 527.

3. An alien may purchase and convey land, but at common law his title would be liable to be divested by an inquest of office. 2 Kent Com. 61-2; 2 Cooley's Bl. Com. 249, note 10. No inquest has been instituted in this case. See the statutes of Indiana on the subject of conveyances to and from aliens. 1 R. S. 1876, p. 61. Also *Murray* v. *Kelly*, 27 Ind. 42.

Upon a careful consideration of the whole record, the judgment below is affirmed, with costs.