Nov. Term,
1848.

Doe
v.
Lazenby.

Doe on the Demise of Huddleston and Others *v.* Lazenby.

An alien, who died in 1832, and had taken no steps towards naturalization, could not transmit title to real estate to his heirs by descent.

The statute of *February*, 1839, for the relief of *William Huddleston* and others, conferred no title on the lessors of the plaintiff in this suit to the land in controversy.

*Wednesday, December 7.*

ERROR to the *Dearborn* Circuit Court.

Perkins, J.—Ejectment for a tract of land in *Dearborn* county. The lessors of the plaintiff are *John*, *William*, and *Robert Huddleston*, *Mary Smith*, late *Mary Huddleston*, and *Robert Smith*, her husband. The defendant is *Priscilla Lazenby*. There are five counts in the declaration; one upon the joint demise of all of said lessors, and four upon separate demises, each for a fourth part of the land. The usual consent rule was entered, and complied with, the cause tried by a jury upon the general issue, and a verdict and judgment were rendered for the defendant. Both parties claim title from the state, each by an act of the legislature supposed to be irreconcilable with that in favor of the other, and the case is one to be added to the already numberless list of those produced by vague and inconsiderate legislation.

The facts are these:

*William Huddleston*, an alien, departed this life in *April*, 1832, having taken no step towards being naturalized. At his decease he was in possession, under a deed in fee simple from one *Cornelius Vanhorn*, of a tract of land containing 316 acres, situate in *Dearborn* county, *Indiana*. He left surviving him no wife, nor children, nor parents; but he left three brothers and a sister, and no more. Two of the brothers, *Thomas* and *Robert*, reside in *Dearborn* county, in this state, the other brother, *Francis*, and the sister *Mary*, resided and still reside in *England*, never having emigrated to this country. Of these brothers, *Thomas* died in *November*, 1832, an alien, having never taken any steps towards becoming naturalized, and *Robert* died in *August*, 1833, an alien, having, however, the *February* previous, declared his intention to become a citi-

zen of the *United States*. *Thomas* left no children, and is not shown to have ever been in possession, jointly with his brothers, or severally, of the land purchased by *William* of *Vanhorn*, a part of which is in controversy in this suit. *Robert* died in possession of said land, and left upon it children, *John*, *William*, *Robert*, and *Mary Huddleston*, then infants, now four of the lessors of the plaintiff. These lessors have been naturalized. In 1837, said *Francis* and *Mary*, the brother and sister in *England*, petitioned for, and obtained in the *Dearborn* Probate Court, partition of said 316 acres tract of land. The lessors of the plaintiff in this suit, were made defendants to the petition. · After the share of said petitioners was set off to them, they sold and deeded it, on the 19th of *November*, 1837, to *Priscilla Lazenby*, the defendant, for 1,600 dollars, which was paid to them. The lessors of the plaintiff, though then infants, were yet old enough to appreciate matters affecting their interests. They were, as were also their guardians, at the time, fully advised of the sale, and made no objection to it. It is the part of said 316 acres tract, so deeded to *Lazenby*, for which this ejectment is brought.

In *February*, 1839, the legislature of this state passed an act, approved on the 15th of that month, which reads as follows:

" An act for the relief of the heirs of *William Huddleston*, *Thomas Huddleston*, and *Robert Huddleston*.

" Sec 1. Be it enacted by the general assembly of the state of *Indiana*, that all the estate and interest of the state of *Indiana* in any lands situated in any county in this state, of which the said *William*, *Thomas*, and *Robert Huddleston*, late of *Dearborn* county, deceased, died seized, acquired by escheat of the same, is hereby released to, and vested in, such persons, being inhabitants of the *United States*, as could take the same by demise, descent, or in right of dower, if the deceased person, and the persons hereby authorized to take, had been native citizens of this state.

" Sec. 2. The persons taking under this act shall take

estates of the same nature and extent, as they would have taken if they and the said *William*, *Thomas*, and *Robert Huddleston* had been native citizens of this state."

This act was in force from and after its passage.

In *January*, 1845, the legislature passed another act, approved on the 10th of that month, the title and first section of which read as follow:

" An act for the relief of *Priscilla Lazenby* and others.

" Sec. 1. Be it enacted by the general assembly of the state of *Indiana*, that the judgment, order, decree, and proceedings of the *Dearborn* Circuit Court, at the term of *March*, 1833, in the case of *Robert Huddleston* against the residue of the heirs of *Thomas Huddleston*, deceased, on petition for partition, and the judgment, order, decree, and proceedings of the Probate Court of said county of *Dearborn*, at the term of *November*, 1837, relative to the partition of the real estate, which was of *William Huddleston*, deceased, be, and the same is hereby, declared to be valid and good, and sufficient in law to vest in the several persons therein-mentioned, and the person or persons holding or claiming by, through, or under them, the several tracts of land therein set apart to them respectively."

The second section declares that those proceedings shall, by all Courts, be held conclusive between the parties to them, and all persons claiming under those parties.

Section third releases all the interest of the state, acquired by escheat in those lands, to the persons to whom the several portions of them were respectively set apart; and the fourth section declares the act in force from its passage.

A good deal of evidence, in addition to the facts already stated, was also given on the part of the defendant, tending to show such facts as it is claimed estop the lessors of the plaintiff from asserting title; and also tending to show fraud in the passage of the act first above-mentioned; but we need not incorporate it into this opinion.

It would seem from the case of *Hall* v. *Timmons*, 2 Richardson's Eq. R. 120, and the authorities there cited,

Nov. Term, 1848.

Doe
v.
Lazenby.

that the lessors in this case were estopped by their knowledge of the sale to *Lazenby*, and their non-objection to it, but on this point we decide nothing.

It was incumbent on the plaintiff to show title in his lessors to enable him to oust the defendant from possession. He could show no title in them by descent, as such a title must have been deduced through *William Huddleston,* and he, being a foreigner who had taken no step toward naturalization, could, at the time of his death, transmit none; *Eldon* v. *Doe*, 6 Blackf. 341; and it is not claimed that the act amending an act authorizing aliens to hold real estate, &c., approved *January* 25, 1842, (Laws of 1842, p. 70,) reaches this case, that act only enabling aliens having made no advance towards naturalization, who die after its passage, to transmit an inheritable title. Upon the act of 1839, above copied, alone, is the title of the plaintiff's lessors rested. Taken literally, that act does not sustain it, because the act does not appear to apply to it. The act designates no particular county in which, and describes no particular piece of land on which, it is to operate. It specifies certain circumstances by a concurrence of which, in reference to any piece of land, we can identify that embraced by the act. Those circumstances are, that the land must be in some county in this state; it must have belonged to the state, by escheat, and *William, Thomas*, and *Robert Huddleston* must have died seized of it, not jointly, perhaps; a several and successive seizin, and dying seized, may have sufficed. And by seizin in this act, we understand to be meant, possession. No higher title could have been intended, as all beyond that is assumed by the act to have been at the time in the state.

The facts in this case, therefore, do not bring it within the letter of the law. Not only is *Thomas Huddleston* not shown to have died in possession of this land, he is not even shown to have ever been upon it. It is not shown to be land, then, of which *William, Thomas*, and *Robert Huddleston* died in possession, and consequently was not vested, by the express terms of the law of 1839, in the

lessors of the plaintiff; and we do not think an equity is shown in their favor—a circumstance not unentitled to consideration—that should induce us, against Mrs. *Lazenby*, to resort to a strained construction of the act to extend its operation to this case.

*Per Curiam.*—The judgment is affirmed.

*A. Lane, D. S. Major*, and *J. Sullivan*, for the plaintiff.

*J. Ryman* and *P. L. Spooner*, for the defendant.