WILLIAM THOMAS, Appellant, *v.* JOSEPH P. BOWMAN, and WILLIAM HARROW, Appellees.

### APPEAL FROM SANGAMON.

A party in possession of land has a possessory title, which is subject to levy and sale on execution.

A party acting in a fiduciary capacity, cannot make any admission to the prejudice of the trust fund, and against the *cestui que trust.*

An estoppel *in pais* can only be set up as a means to prevent injustice.

A bought, on execution against C, and the heirs of B, a lot, of which C had possession. Subsequently, D, a judgment creditor of the heirs of B, redeemed from that sale, and purchased the same lot under his own judgment, and, after sometime, A received the redemption money from the sheriff. *Held,* that the accepting the redemption money by A, did not prevent him from resisting D's claim to the lot.

THE facts of this case are fully stated in the opinion.

WILLIAM THOMAS, Appellant, *pro se.*

J. G. BOWMAN, and WILLIAM HARROW, Appellees, *pro se.*

BREESE, J. This was an action of ejectment brought in the Lawrence Circuit Court, by Bowman and Harrow, against Wise, for the recovery of lot twenty-one, in the town of Lawrenceville. At the April term, 1861, of the Circuit Court of that county, William Thomas, claiming to be the owner of the lot, was admitted defendant in place of Wise, and filed his plea not guilty. A trial was had by consent, by the court, without the intervention of a jury, and a verdict found for the plaintiffs.

The facts, as they appear from the bill of exceptions, are these: Thomas, as trustee of the Bank of Illinois, claiming an equitable title to the lot in controversy, in his right as such trustee, commenced a suit in chancery, in the Circuit Court of Lawrence county, against the heirs at law of Touissant Dubois, deceased, and Geo. W. Wise, who was in possession of the lot, for the purpose of effecting a partition thereof between the parties, according to their rights, as might be determined in that suit. The defendants appeared and put in their de-

murrer to the bill, which was sustained, and the bill dismissed. The case was then taken to this court, and at the December term, 1856, was heard *ex parte*, and the decree reversed, and a judgment for costs entered against all the defendants, and the cause remanded to the Lawrence Circuit Court for further proceedings. At the May term, 1857, of that court, the demurrer to the bill was overruled, and the defendants required to put in their answer, and the venue changed, by consent, to the county of Sangamon. At a term of the Circuit Court of that county, the defendants having failed to answer, a decree, *pro confesso*, was rendered against them, and the court, proceeding to hear the case on the bill, exhibits and testimony, found the title to the lot to be vested in Thomas, as trustee of the Bank of Illinois, and entitled to the exclusive possession thereof, and ordered that possession be surrendered to him, and the defendants enjoined and prohibited from setting up or asserting any right, title or claim to the same, and that the defendant, Wise, pay over to the complainant the rents due, and to become due, for the use of the lot and appurtenances.

On the 20th of June, 1857, an execution was issued upon this judgment of this court, for the costs awarded Thomas therein, which was levied by the sheriff of Lawrence county, on the 25th of July, 1857, on the lot in controversy, and he sold the same in satisfaction to Thomas, Wise still being in possession. At the October term, 1858, of the Lawrence Circuit Court, Joseph G. Bowman obtained a judgment against all the defendants in the chancery suit, except Wise, upon which an execution was issued and delivered to the sheriff of Lawrence county, on the 25th of October, 1858, and Bowman, claiming the right to redeem the lot from the sale to Thomas, fifteen months not having expired, paid to the sheriff the amount, in bank bills, necessary to redeem the lot, and, thereupon, caused the lot to be levied on and sold to satisfy the execution. Bowman and Harrow became the purchasers, to whom the sheriff executed a deed. The sheriff paid over to Thomas the amount of money he received from Bowman on the redemption, and received from him a receipt indorsed on the certificate of purchase, as follows: "Law-

renceville, Ill., 20 Dec'r, 1858. Joseph Bowman, a judgment creditor of Jesse K. Dubois, and (setting out the names of the defendants) having paid to the sheriff of Lawrence county the sum of seventy-four dollars and nineteen cents, of bank bills, for the purpose of redeeming the property herein described, from the sale stated in this certificate, the sheriff has paid me the said sum of money in bank bills."

On this testimony, the court decided that Bowman and Harrow were seized in fee of the lot in controversy, and rendered a judgment that the defendant, Thomas, was guilty of the trespass and ejectment.

From this decision, Thomas prayed an appeal to this court, and assigns for error the general errors, and we are to determine whether there is sufficient in the record to justify the record and judgment.

The appellees, to sustain the judgment, insist, that Thomas, by the mere fact of selling the lot on an execution against the heirs of Dubois, admitted, thereby, their interest in it.

It will be remembered, that the judgment for costs in the Supreme Court was against the heirs at law of Dubois and Wise, and that Wise was in the actual possession of the premises. The execution on this judgment was against Wise also, and his possessory title or right was subject to sale under it. The decree rendered by the Sangamon Circuit Court establishes the title out of the heirs of Dubois, and in Thomas, as trustee of the Bank of Illinois. Consequently, on a sale of the lot on the execution for costs against the heirs of Dubois and Wise, Thomas, when he purchased, bought nothing to which the heirs of Dubois had title. His title was not derived from that sale and purchase. It existed out of them long before the sale, and in Thomas, as the Circuit Court of Sangamon county had found by its decree. Wise's possessory right, whatever it may have been, was a proper subject of sale and purchase, and to that Thomas succeeded, but derived nothing from the heirs of Dubois.

It is insisted also, that Thomas admitted the right of Bowman to redeem, by receiving, without objection, the redemption money. We do not regard the receipt of the redemption

money by Thomas, as affecting the title to the lot. We think it can have no such effect, the more especially against one acting in a fiduciary character. His position would not allow him to make any admission to the prejudice of the trust fund, and against his *cestui que trust.* Lewin on Trusts and Trustees, 72 L. L. 437.

It is also insisted, that Thomas is estopped from claiming title to the lot adverse to the heirs of Dubois, by his having sold the lot as the property of Dubois on his execution, and accepting the redemption money from Bowman, and by accepting the redemption, he stands in the position of one who sees his property sold as the property of another, and makes no objection—that by such silence, he is estopped from afterwards asserting his claim.

An estoppel *in pais* can only be set up as a means to prevent injustice; as a shield, not as a sword. If the receipt of the redemption money by Thomas, influenced or caused the act of Bowman in levying on, and selling these premises, and actually led him into the line of conduct he adopted, it might be said Thomas would be concluded. But the case nowhere shows that Thomas had any knowledge of the levy and sale to Bowman and Harrow, until the 20th of December, near three months after the levy. He did not investigate it—he did not stand by and see the thing done, nor was he in a position to advise or prevent the one or the other. The whole proceeding originated with, and was concluded by Bowman, and at his risk, uninfluenced by the conduct of Thomas in any degree. The doctrine of estoppel cannot, we think, be successfully invoked to establish a title in the heirs of Dubois, who had no title, when the property was sold on the execution in favor of Thomas against them and Wise, and when Bowman caused it to be sold. The mere naked fact of the receipt of the redemption money, cannot have this effect. The case of *Morrison* v. *Letcher et al.*, 27 Ill. 214, is in point. A title cannot be created, as a general rule, in this way, nor a party divested by such an act. It may not be equitable that Thomas should retain the redemption money, but that consideration is not involved in this case.

It is a well settled rule in the action of ejectment, that the plaintiff must recover on the strength of his own title. He must show a legal title. Now this record shows nothing of the kind. It does not show a derivative title from the heirs of Dubois, but does show a decree in chancery, by which the title was declared out of them long before either of these parties had any interest in the premises. The isolated fact of the receipt of the redemption money under the circumstances shown in this case, cannot have the potent effect of creating a title where none existed. The case of *McLagan* v. *Brown*, 11 Ill. 519, can have no application, for here was no title in the heirs of Dubois, and, consequently, no equity of redemption in favor of a subsequent judgment creditor.

It is unquestionably true, that Thomas, in litigating in chancery with the heirs of Dubois and Wise, knew that his title as trustee was derived from their ancestor, and it was to have the title decreed out of them, and in him, that the bill was filed. The decree shows most conclusively, that the heirs of Dubois, as such, had no title to the lot, it having passed from them many years before. Wise had a possessory right subject to sale, and this right Thomas might purchase. The appellees knew, also, when Bowman obtained his judgment and execution, and had a levy and sale of the lot, that the heirs of Dubois had not a shadow of title to it, and, consequently, Bowman could get no equity of redemption to be available.

In every light in which we can view this case, we cannot discover any principle applicable to the facts to justify the verdict. What a court might do, on a proper case being made, looking to the recovery of the redemption money, we cannot say. That the facts do not show a title, in fee, in the appellees, to the lot in controversy, we are well satisfied, and accordingly reverse the judgment, and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed.*