*W. V. Burns*, for the appellee.

---

THE JUNCTION RAILROAD COMPANY v. HARPOLD and Another.

An agreement, not in writing, to convey real estate, can not be
  enforced, unless facts exist which remove it from the operation of
  the Statute of Frauds.

If a person, having title to an estate, which is offered for sale, and,
  knowing his title, *stand by*, and encourage the sale, or do not for-
  bid it, and thereby another is induced to purchase the estate,
  under the supposition that the title is good, the person, so *stand-
  ing by*, and being silent, shall be bound by the sale, and neither
  he, nor his privies, shall be allowed to dispute the purchase.

But, if the person, having the adverse claim, is not apprised of his
  rights, or the purchaser knows them to exist, these principles do
  not apply.

APPEAL from the *Madison* Circuit Court.

DAVISON, J.—This was an action, by the *Railroad Com-
pany*, against *Harpold* and *Williams*, to quiet title to real
estate, etc. The case made by the complaint is, in substance,
as follows: In the year 1853, *Harpold* and *Williams* held, in

severalty, the fee simple of certain land in *Madison* county, and known as the south-east quarter of section 14, in township 19, north, of range 7, east; *Williams* owning the east half of the quarter, and thirty-five acres of the west half, and *Harpold* the residue of said west half, supposed to be forty-five acres. *Harpold*, being desirous of obtaining a portion of the capital stock of said company, offered to subscribe his forty-five acres at forty dollars per acre, payable in such stock; but his offer was rejected. After this *Harpold*, having ascertained that the company was willing to pay the above sum per acre, for *Williams'* portion of the land, requested him, *Williams*, to subscribe the entire quarter section, in his own name, and as his own property, at forty dollars per acre, in order that he, *Harpold*, might realize that sum, per acre, for his portion of the land; and *Williams*, in accordance with that request, and at the instance of *Harpold*, did subscribe to the capital stock of said company, in his own name, and as his own property, the whole tract of land as above described, at forty dollars per acre, which subscription was accepted and confirmed by the company. Believing the land, thus subscribed, to be the property of *Williams*, or that he had full authority to sell and convey the same, the company afterward, by her agent, one *E. A. McArthur*, tendered to *Williams*, in stock, issued to him, full payment, at the price agreed on, six thousand four hundred dollars, and demanded of him a conveyance in fee simple. But *Williams* informed said agent that he must first consult *Harpold* in relation to such conveyance; and they, *Williams* and *Harpold*, having consulted together, it was agreed between them, that *Williams* should execute to the company a conveyance for the entire tract, and receive the stock in payment therefor, and that *Harpold*, on presentation, or delivery to him, of one thousand eight hundred dollars of such stock, was to execute to *Williams*, a conveyance in fee for said forty-five acres of land. And in pursu-

ance of the aforesaid agreement and authority, *Williams,* having informed said agent of the assent of *Harpold* to such conveyance, in the manner above stated, did, then and there, execute to the company, and deliver to her agent, a deed in fee simple, for the entire quarter section, and upon the delivery of said deed, *Williams* received and accepted, in full payment for the land conveyed, the capital stock which had been issued in his name, to-wit: one hundred and twenty-eight shares, of fifty dollars each, amounting in the aggregate to six thousand four hundred dollars. It is averred that, afterward, in the year 1857, the company sold the quarter section, above described, to one *Andrew Jackson,* and gave him a bond, conditioned that she would execute to him a conveyance in fee simple, upon payment of the purchase money; but the company has been informed, that *Harpold* claims the legal title to the aforesaid forty-five acres, and refuses to execute to *Williams,* or to the company, any conveyance whatsoever for the same; although *Williams,* in the year 1853, and long before the commencement of this suit, as the company is informed and believes, tendered *Harpold,* duly assigned to him, thirty-six shares of said stock, which, at fifty dollars per share, amounted to one thousand eight hundred dollars, and demanded a deed for the land; and he, *Williams,* is still ready, etc., to deliver said shares of stock, upon the execution of such deed, etc. The relief sought is, that *Williams* be directed to bring the thirty-six shares of stock into Court, to be delivered to *Harpold;* that he be directed to convey the forty-five acres to *Williams,* or to the company; and that the title of the company be quieted, etc.

The defendant, *Williams,* answered, admitting the facts alleged in the complaint. *Harpold,* the other defendant, demurred, but his demurrer was overruled; and thereupon he answered, setting up, *inter alia,* that the agreement between him and *Williams,* whereby he agreed to convey the forty-five acres of land to *Williams,* was not in writing, etc.

Demurrer to the answer overruled, and final judgment given for the defendants.

The only question to settle is: Whether the agreement between the defendants, not being in writing, is inoperative under the Statute of Frauds? The statute says: "No action shall be brought, upon any contract for the sale of lands," unless such contract be in writing, and signed by the party to be charged, etc. 1 R. S., p. 299, sec. 1. The agreement in question seems to be within the statute, because it plainly relates to the sale of real estate. But the appellant contends that *Harpold*, having *stood by*, and allowed his title to be conveyed, is estopped from setting it up in defense of the action. Upon this subject *Mr. Story* thus states the law: "If a man, having title to an estate, which is offered for sale, and knowing his title, *stands by* and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former, so *standing by*, and being silent, shall be bound by the sale; and neither he, nor his privies, shall be allowed to dispute the purchase." 1 Story's Eq. Jur., sec. 185. See, also, *Gatling* v. *Rodman*, 6 Ind. 289, and cases there cited. "These principles, however, do not apply, where a party, having the adverse claim, is not apprised of his rights, or *where the purchaser knows them to exist*, because, in that case, there can be no concealment, nor could the title be deemed a secret." And we are, therefore, led to inquire, whether, in the complaint before us, such concealment is sufficiently alleged. It may be noted, that the complaint contains no direct averment that the plaintiff did not, at the time she purchased the land, have knowledge of *Harpold's* title; and the facts are, that *Harpold*, in the first instance, offered to subscribe his forty-five acres, a portion of the quarter section afterward conveyed, but his offer was rejected. He then requested *Williams* to subscribe, in his own name, and as his own property, the entire quarter,

which was accordingly done; and further, when the company's agent tendered the stock to *Williams*, and demanded a deed, *Williams* informed the agent, that he must consult *Harpold* in relation to the conveyance, and such consultation having been had, the agent was informed of it, and distinctly told, that *Harpold* assented to the conveyance. These facts at once show that the company, by her agent, was not unapprised of *Harpold's* legal right to a portion of the land; and that being the case, he is not chargeable with concealing his title. The result is, the contract, whereby *Harpold* agreed to dispose of his land, not being in writing, is within the Statute of Frauds, and can not, therefore, be enforced in this action.

*Per Curiam.*—The judgment is affirmed, with costs.

*Davis* and *March*, for the appellant.

*Buckles* and *Sansbury*, for the appellees.