Reid *et al. v.* The State, *ex rel.* Thompson, *et al.*

———◆●◆———

No. 6937.

REID ET AL. *v.* THE STATE, EX REL. THOMPSON, ET AL.

ALIEN.—*Escheat.*—*Information.*—*Counter-Claim.*—An information by the prosecuting attorney, under section 761, 2 R. S. 1876, p. 301, may be made the subject of an original action or of a counter-claim by the State, and when it is filed as a counter-claim under section 365, 2 R. S. 1876, p. 185, and the original action is dismissed, the defendant shall have the right to proceed to a trial.

Reiñ *et al. v.* The State, *ex rel.* Thompson, *et al*

SAME.—*Intestate —Entry without Information Found.*—Where an alien dies. intestate, owning real estate, leaving no one in possession and no known heirs, the State has title at once, and may enter and take possession without information found; otherwise she must first establish her title by information.

SAME.—*Taxes after Escheat.*—After the legal title to the land of an alien has become vested in the State by escheat on his death without inheritable blood, any assessment of taxes upon the land, or its sale for delinquent taxes, is void.

SAME.—*Limitation of Action.*—A counter-claim filed by the State within two years after the passage of the act of December 21st, 1872, 1 R. S. 1876, p. 72, is not barred by section 250 thereof.

SAME.—*Evidence.—Estoppel in Pais.*—An *estoppel in pais* against the State· from asserting her title to escheated land is not made out by the assessment of taxes thereon, its sale and conveyance for delinquent taxes, and the assessment and collection of taxes from the purchaser at the tax sale.

SAME.—*Estoppel by Deed.*—An auditor's deed made in consummation of a sale for taxes can not bar the assertion by the State of any claim or right to the land sold.

SAME.—*Taxes.—Merger.—Illegal Sale.*—The State's claim for taxes is merged in the ownership in fee acquired by escheat, a sale for such taxes is illegal, and a purchaser is entitled to repayment of his bid and all subsequent taxes paid, and has a remedy for lasting and valuable improvements.

SAME.—*Query.*—Can the State be estopped by the conduct of public ministerial officers?

From the Benton Circuit Court.

*R. D. Logan, E. O'Brien, I. Klingensmith* and *J. S. Reid,* for appellants.

*D. P. Baldwin,* Attorney General, *T. W. Woollen* and *S. P. Thompson,* for appellees.

WOODS, J.—This action was brought in the Newton Circuit Court, at the March term, 1874, under the provisions of the act of March 10th, 1861, 1 R. S. 1876, p. 61, to authorize aliens to hold, sell and convey lands in this State. The original plaintiffs were Rudolph Émisberger and others, heirs at law of Joseph Emisberger, an alien residing in the State of Indiana, who died intestate, on the 10th day of January, 1860. At the time of his death the plaintiffs were aliens residing in the republic of Switzerland. The·

sole defendant at the commencement of the suit was Christian F. Smith. The object of the suit was to recover the possession of certain lands described by the plaintiffs, who claim as alien heirs of their alien ancestor, against the defendant, who claims remotely under a sale for taxes, and whose title will be noticed more particularly in the course of this opinion. During the proceedings, before issue joined, the State of Indiana, on the information of her prosecuting attorney, under section 761 of the code, was admitted a party defendant, and filed a counter-claim, setting up the alienage of Joseph Emisberger, and claiming title to the lands by escheat, making the original plaintiffs, and John S. Reid and Nancy J. Reid, through whom Smith claims the land, parties defendants thereto. At this stage of the proceedings the original plaintiffs dismissed their complaint. The case then stood as the State of Indiana, plaintiff, against the original plaintiffs, and Reid and Reid, defendants. They answered the counter-claim, separately and jointly, by a general denial and several special paragraphs of answer. A change of venue was then granted to the Benton Circuit Court. In the latter court demurrers for the want of facts were sustained to the special paragraphs of answer to the counter-claim; and a motion to dismiss the counter-claim was overruled. Trial by jury; verdict for plaintiff; motion for a new trial overruled; exceptions; appeal.

The following questions are discussed in this court:

1. First, in the order of the proceedings, but not the first discussed in the brief of appellants, is the question of the dismissal of the original complaint, which it is contended carried with it the counter-claim, and that consequently there was no case of record before the court to try. The ground of the argument is, that, even admitting the escheat as claimed, the State could not assert title until after information found under section 761 of the code. This section is as follows:

"Whenever any property shall escheat, or be forfeited to the State for its use, the legal title shall be deemed to be in the State from the time of the escheat or forfeiture ; and an information may be filed by the prosecuting attorney in the circuit court for the recovery of the property, alleging the ground on which the recovery is claimed ; and like proceedings and judgment shall be had as in a civil action for the recovery of property."

The appellants, in other words, contend that an information by the prosecuting attorney, under section 761, can not be made the subject of a counter-claim ; but it is clear to us that such information could be made the subject of an original action in favor of the State, and, as the section declares that under such information like proceedings and judgment may be had as in a civil action, it seems to us to follow that such information may be the subject of a counter-claim ; and, if so, the dismissal of the original complaint did not dismiss the counter-claim ; indeed, section 365 expressly declares that the defendant shall have the right of proceeding to the trial of his counter-claim, without notice, although the plaintiff may have dismissed his action, or failed to appear ; and the practice is well settled accordingly. *Egolf* v. *Bryant*, 63 Ind. 365.

We have thus far viewed this question as if the State had no right to the possession of escheated lands until after information found. We do not admit this to be the law, though we decide nothing upon the question. There seems to be a difference, in this respect, between cases where the alien dies intestate, leaving no one in possession, and where he makes a devise. In the former case, there are no known heirs, and no claimant appearing ; the State, therefore, has title at once, and may enter and take possession. In the latter case, there are known devisees claiming the land ; the State, therefore, must first establish her title to the land by information found before she is entitled to possession. In this case, Joseph Em-

isberger died intestate, leaving no one in possession of the land. See the following cases: *Eldon* v. *Doe*, 6 Blackf. 341; *Doe* v. *Lazenby*, 1 Ind. 234; *Murray* v. *Kelly*, 27 Ind. 42; *Fuhrer* v. *The State*, 55 Ind. 150; *Halstead* v. *The Board*, *etc.*, 56 Ind. 363; *Dale* v. *Frisbie*, 59 Ind. 530; *The State*, *ex rel.*, v. *Meyer*, 63 Ind. 33; *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 603; *Wilbur* v. *Tobey*, 16 Pick. 177; *White* v. *White*, 2 Met. Ky. 185; *O'Hanlin* v. *Den*, Spencer, 31; *Colgan* v. *McKeon*, 4 Zab. 566; *Rubeck* v. *Gardner*, 7 Watts, 455; *Farrar* v. *Dean*, 24 Mo. 16; *Crane* v. *Reeder*, 21 Mich. 24.

2. The appellants insist that the court erred in overruling their demurrer to the counter-claim of the State. Neither the demurrer nor any ruling upon it is in the transcript, nor is the sufficiency of the counter-claim put in question by an assignment of error. There is, therefore, nothing upon this point for us to decide.

3. They also insist that the court erred in sustaining the several demurrers of the State to their special paragraphs of answer. There is nothing available in this point. The general denial of all the defendants was in to the counter-claim. The evidence in support of the special paragraphs might have been, and was, given under the general denial. No injury, therefore, could possibly result from sustaining the demurrers to the special paragraphs of answer to the counter-claim.

4. The instructions given by the court to the jury are rather complained of than discussed by the appellants, and the instructions refused by the court are claimed to be right, but are not supported by any argument; they are, indeed, scarcely more than mentioned. We do not, therefore, feel called upon to examine them in detail. If this opinion is right, then the instructions given were right, and the instructions refused, properly refused.

5. The only question fully insisted upon, which arises

under the motion for a new trial, is the insufficiency of the evidence to support the verdict, or rather, that the verdict is contrary to the evidence, because it shows that the appellants had title in, and the right of possession to, the land. It is not claimed that the heirs of Joseph Emisberger have any title in the land ; indeed, it is practically admitted that they have abandoned their claim ; but it is claimed that the appellants had, and have, a better right to the land than the State. Nor is it disputed that the State proved her claim as against the heirs of Joseph Emisberger, who originally brought the suit. This brings us to the examination of the title alleged to be in the appellants, and the evidence in its support.

It is claimed that the land was sold in February, 1862, to pay the taxes delinquent for the years 1859, 1860 and 1861, to Nathaniel West, and the certificates of purchase duly given to him by the county auditor ; that West, in February, 1864, assigned the certificates of purchase to John S. Reid, who upon the certificates received the auditor's deed of conveyance for the land ; that John S. Reid conveyed the same, in 1869, to Lafayette McCulloch, in trust, for the benefit of Nancy J. Reid ; that John S. and Nancy J. Reid conveyed the same, in 1873, to the appellant Christian F. Smith, who now claims the title against the State. The only evidence to prove this is as follows : The admission of fact that Joseph Emisberger had no personal property in Newton county during the years the taxes were delinquent upon the land ; the conveyances of the land from the auditor to John S. Reid, from him to McCulloch, from McCulloch to Nancy J. Reid, and from Nancy J. and John S. Reid to Smith. There was no evidence that any taxes were ever legally assessed on the land, that any taxes were legally returned delinquent against it, nor that the land was ever sold for taxes to West, at the proper time and place. Such a deed of conveyance of land sold for de-

linquent taxes can not be upheld. *Ward* v. *Montgomery*, 57 Ind. 276 ; *Mc Whinney* v. *Brinker*, 64 Ind. 360. Besides, the legal title to the lands became vested in the State by escheat, on the 10th day of January, 1860, by the death of the alien Joseph Emisberger, without inheritable blood. Any assessment of taxes upon the land, or its sale for delinquent taxes after that date, would be void as against the State.

6. It is also claimed by the appellants, even though Smith has only a colorable title derived from the tax sale, that, by section 250 of the act of December 21st, 1872, 1 R. S. 1876, p. 127, the action is barred by limitation. This section provides, that "No action for the recovery of real property sold for the non-payment of taxes shall lie, unless the same be brought within five years after the date of the sale thereof for taxes as aforesaid." The State filed her counter-claim in this case in March, 1874, within two years after the passage of the act. Although the tax sale in this case occurred nearly ten years before the State filed her counter-claim, yet, as there was no such law in force at the time the sale was made, the action will not be barred until after a reasonable time has elapsed from the taking effect of the act. In the case of *Dale* v. *Frisbie*, 59 Ind. 530, wherein this question was carefully considered, it was held that two years and two months after the law took effect was not an unreasonable time within which to allow the claimant to bring his action. It must therefore be held that this case is not barred by the statute.

7. Lastly, the appellants ardently insist that the evidence proves a state of facts which shows that the State is estopped *in pais* by her own acts, from claiming the land against the appellees.

It may be conceded that the evidence fairly proves the following facts : That, upon the death of Joseph Emisberger, January 10th, 1860, the land at once escheated to the State ; upon that day the right of the State to the land be-

·came complete. The land was sold in February, 1862, to pay the taxes delinquent upon it for the years 1859, 1860 and 1861; that Nathaniel West was the purchaser of the land at the sale for taxes, and received the regular certifi- ·cates of purchase therefor from the auditor; that he as- signed these certificates to John S. Reid, who, in February, 1864, received the auditor's deed for the land; that, in De- cember, 1869, John S. Reid conveyed the land to Lafayette McCulloch, in trust for the benefit of Nancy J. Reid, in pur- suance of which McCulloch, in 1872, conveyed the lands to Nancy J. Reid; that, in 1873, John S. and Nancy J. Reid sold and conveyed the land to Christian F. Smith, who has ·ever since been in possession thereof and claiming title ·thereto. All of these deeds of conveyances were duly. re- corded. Lasting and valuable improvements have been made upon the land since its sale for taxes. It may be conceded, too, that these facts show that the State, through her offi- cers, sold the land for delinquent taxes, which partly ac- crued after she became the owner of the land; that the proper public officer made a deed of conveyance of the land two years after its sale for taxes, at a time when the State ·owned the land, and that the State made no claim to the land until twelve years after the sale for taxes—and it may be presumed that she collected her taxes from it during all this time—while it was held and claimed adversely, under the sale.

But all these things conceded, it does not follow, in our judgment, that a case of estoppel *in pais* is made out against the State from asserting her title to the land by virtue of the escheat. In the absence of misrepresentation or fraud, of which there is no pretence, it is of the essence of an estoppel *in pais* that the party claiming the benefit of the estoppel shall have acted in ignorance of material and rele- vant facts within the knowledge of the other party, or which the other party ought, under the circumstances, to have

known and communicated. No just claim can be made that the purchaser at the tax sale in question, and the successive grantees under the tax deed, were not as well acquainted with the facts, and as able to learn them by inquiry, as the State or her officers who had any part in making the sale and conveyance. To say the least, the parties had equal opportunity to know the facts, and were alike bound to know the law, and if there is any estoppel in the case, it is not *in pais,* but by deed. But it will hardly be contended that an auditor's deed, made in consummation of a sale for taxes, can bar the assertion by the State of any claim or right to the land sold. Neither by express words nor by implication of law does such a deed contain a covenant either of seizin or warranty. It does not purport to convey any right, title or interest of the State in the land other than its lien for the taxes assessed; and none of the parties to the sale in question could have supposed that a transfer of the title held by escheat was intended. The deed must be deemed to have been intended simply for what it was, a tax deed, operative on the title of the parties against whom the taxes were assessed for which the sale was made, and conveying that title to the purchaser, if the proceedings were conducted in all essential respects in strict compliance with the law, but otherwise transferring to the purchaser only the lien which the State had held, or, if the State had no lien, the right to reclaim the amount of his bid. The tax deed is not even the equivalent of an ordinary quitclaim, which conveys all existing right or title of the grantor, while the former, if in all respects regular, conveys only the right which the State has acquired authority to convey under the particular assessments of taxes for which the sale is made. It is not pretended that the sale under consideration was shown to have been in all respects regularly made; so as to be in itself operative as a valid conveyance of the legal fee to the grantee named in the deed. The effort is to help it out on grounds,

of estoppel; but, as already shown, this can not be done. Estoppels are invoked for the purpose of preventing frauds; but to hold that the purchaser at a tax sale, which he and the officers who conduct it suppose to be a tax sale only, may acquire by estoppel a transfer to himself of some other right or title of the State to the property, even though the existence of that right be at the time unknown, but, whether known or unknown, not in contemplation of the parties, would be to promote fraud, and would impart fresh currency to the obsolete expression that estoppels are odious. Such an application of the doctrine would be fraught with danger to the public interest, and would render the enforced collection of taxes on private property, in which the State holds an interest as mortgagee or otherwise, impracticable, without special legislation to meet the case, unless done at the sacrifice of interests or securities, in most cases probably, more valuable than the taxes.

But, returning to the case in hand, if the purchaser at the tax sale knew of the escheat, he knew that the sale was illegal, the claim for the taxes being merged in the ownership in fee. If he did not know of the escheat, then he did not suppose that he was acquiring any right derived therefrom, and bought as a purchaser at an ordinary tax sale. The amount of his bid at the sale, and of all subsequent taxes paid, he is entitled doubtless to have repaid, and if he or his grantees have made lasting and valuable improvements, the statute furnishes them ample means for obtaining their value. In no view of the case can we discover, in law or in fact, any ground on which an estoppel against the State can rest; and whether, under any circumstances, such an estoppel in such a case could be caused by the conduct of public ministerial officers, we do not find it necessary to decide. On this subject the appellants have cited *Dezell* v. *Odell*, 3 Hill, 215; *Commonwealth* v. *Heirs of Andre*, 3 Pick. 224; Bigelow Estoppel, p. 246; *Nieto* v. *Carpenter*, 7 Cal. 527.

Reid *et al. v.* The State, *ex rel.* Thompson, *et al.*

While counsel for the appellee have cited Bigelow Estoppel, p. 246; *Martin* v. *Zellerbach,* 38 Cal. 300; *Farish* v. *Coon,* 40 Cal. 33; *The People* v. *Brown,* 67 Ill. 435; *Commonwealth* v. *Heirs of Andre,* 3 Pick. 224; *Enfield* v. *Permit,* 5 N. H. 280; *Colman* v. *Anderson,* 10 Mass. 105; *Crane* v. *Reeder,* 25 Mich. 303; *Mattox* v. *Hightshue,* 39 Ind. 95; *Pettis* v. *Johnson,* 56 Ind. 139; *Graham* v. *Graham,* 55 Ind. 23; *Behler* v. *Weyburn,* 59 Ind. 143; *Shumaker* v. *Johnson,* 35 Ind. 33; *Fletcher* v. *Holmes,* 25 Ind. 458; *The Junction R. R. Co.* v. *Harpold,* 19 Ind. 347; *Jersey City* v. *The State,* 30 N. J. 521; *Mills* v. *Graves,* 38 Ill. 455; *Hill* v. *Epley,* 31 Pa. St. 331; *Newman* v. *Edwards,* 34 Pa. St. 32; *Lewis* v. *San Antonio,* 7 Tex. 288; *Thomas* v. *Bowman,* 29 Ill. 426; *Buckingham* v. *Smith,* 10 Ohio, 288.

Upon the general doctrine of estoppels, see the following authorities: *Penrose* v. *Griffith,* 4 Binn. 231; *The Welland Canal Co.* v. *Hathaway,* 8 Wend. 480; *Carver* v. *Jackson,* 4 Peters, 1; *Laney* v. *Laney,* 4 Ind. 149; *Gatling* v. *Rodman,* 6 Ind. 289; *Conklin* v. *Smith,* 7 Ind. 107; *Barnes* v. *McKay,* 7 Ind. 301; *Morris* v. *Stewart,* 14 Ind. 334; *The State, ex rel.,* v. *Stanley,* 14 Ind. 409; *The Junction R. R. Co.* v. *Harpold,* 19 Ind. 347; *Burton* v. *Reeds,* 20 Ind. 87; *Berry* v. *Anderson,* 22 Ind. 36; *Fletcher* v. *Holmes,* 25 Ind. 458; *Love* v. *Wells,* 25 Ind. 503; *Joyce* v. *The First National Bank, etc.,* 62 Ind. 188; *Hadley* v. *The State, ex rel.,* 66 Ind. 271; *The Greensburgh, etc., Turnpike Co.* v. *Sidener,* 40 Ind. 424; *McCabe* v. *Raney,* 32 Ind. 309.

Judgment affirmed, with costs.