Attorney General, John S. Long and W. W. Thornton, for appellee.

---

## JOHN S. REID ET AL. V. THE STATE OF INDIANA.

1. *Right of the State to an Escheat as a Counter-claim.*—Even were it to be allowed that the State had no right to the possession of escheated lands without an information found, yet such information may be made the subject of a counter-claim, so that, if the original complaint be dismissed, this does not dismiss the counter-claim.

2. *Possession under Escheat by Alienage.*—Where an alien dies intestate leaving no one in possession, no heirs being known and no claimant appearing, the State may enter and take possession at once; but if the alien makes a devise, the State must first establish title by information before taking possession, because here are known devisees claiming the land.

3. *Harmless Ruling on a Demurrer.*—Where an answer is put in to a counter-claim, by way of a general denial, under which evidence supporting special paragraphs of answer may properly be given, a ruling sustaining a demurrer to such special paragraphs is harmless, even if erroneous, and is not available on appeal.

4. *What Evidence Must Appear in Order to Sustain a Tax Deed.*—It must be shown that the taxes were legally assessed on the land, that they were legally returned as delinquent, and that the land was sold therefor at the proper time and place.

5. *Statute of Limitations as to Prior Sales for Taxes.*—A reasonable time after the passage of a statute of limitations will be allowed to assert claims to lands sold for taxes, whether by individuals or by the State.

6. *Estoppel in Pais as to the Right of Escheat.*—In the absence of misrepresentation or fraud, it is of the essence of an estoppel *in pais* that the party claiming the benefit of the estoppel shall have acted in ignorance of material and relevant facts within the knowledge of the other party, or which the other party ought, under the circumstances, to have known and communicated.

7. *Estoppel by Deed as to the State.*—An auditor's deed on a sale for taxes cannot bar an assertion by the State of title to the land sold, for such a deed neither expressly or impliedly contains a covenant of seizure or of warranty. It does not purport to convey any right, title or interest of the State other than the lien for the taxes assessed; and none of the parties to the sale could suppose the deed to be intended otherwise than merely as a tax deed, operative only on the title of the parties against whom the taxes were assessed for which the sale was made, and conveying to the purchaser the title, if all the proceedings are strictly lawful, but otherwise only the lien which the State had held, or if the State had no lien, then the right to reclaim his bid. There can be no estoppel thereby against any claim the State may have to the title by escheat. The purchaser may have a right as against such claim to demand the return of the bid at the sale, of taxes since paid, and of the value of permanent and valuable improvements made on the land, but no more.

Filed June 23, 1881.

Appeal from Benton Circuit Court.

Opinion of the court by Mr. Justice Woods.

This action was brought in the Newton Circuit Court, at the March term, 1874, under the provisions of the act of March 10, 1861, (1 R. S. 1876, 61), to authorize aliens to hold, sell and convey lands in this State. The original plaintiffs were Rudolph Emisberger and others, heirs at law of Joseph Emisberger, an alien residing in the State of Indiana, who died intestate, on the 10th day of January, 1860. At the time of his death the plaintiffs were aliens residing in the republic of Switzerland. The sole defendant at the commencement of the suit was Christian F. Smith. The object of the suit was to recover the possession of certain lands, described by the plaintiffs, who claim as alien heirs of their alien ancestor, against the defendant, who claims remotely under a sale for taxes, and whose title will be noticed more particularly in the course of this opinion. During the proceedings, before issue joined, the State of Indiana, on the information of her prosecuting attorney, under section 761 of the Code, was admitted a party defendant, and filed a counter-claim, setting up the alienage of Joseph Emisberger and claiming title to the lands by escheat, making the original plaintiffs, John S. Reid and Nancy I. Reid, through whom Smith

claims the land, party defendants thereto. At this stage of the proceedings the original plaintiffs dismissed their complaint. The case then stood as the State of Indiana, plaintiff, against the original plaintiffs and Reid and Reid, defendants; they answered the counter-claim separately and jointly, by a general denial, and several special paragraphs of answer. A change of venue was then granted to the Benton Circuit Court. In the latter court demurrers, for the want of facts, were sustained to the special paragraphs of answer to the counter-claim, and a motion to dismiss the counter-claim was overruled. Trial by jury, verdict for plaintiff, motion for a new trial overruled, exceptions, appeal.

The following questions are discussed in this court:

1. First in the order of the proceedings, but not the first discussed in the brief of appellants, is the question of the dismissal of the original complaint, which, it is contended, carried with it the counter-claim, and that consequently there was no case of record before the court to try. The ground of the argument is, that, even admitting the escheat as claimed, the State could not assert title until after information found under section 761 of the Code. This section is as follows:

"Whenever any property shall escheat or be forfeited to the State for its use, the legal title shall be deemed to be in the State from the time of the escheat or forfeiture, and an information may be filed by the prosecuting attorney in the circuit court for the recovery of the property, alleging the ground on which the recovery is claimed, and like proceedings and judgment be had as in a civil action for the recovery of property."

The appellants, in other words, contend that an information by the prosecuting attorney, under section 761, cannot be made the subject of a counter-claim; but, it is clear to us, that such information could be made the subject of an original action in favor of the State, and, as the section declares that under such information like proceedings and judgment may be had as in a civil action, it seems to us to follow that such information may be the subject of a counter-claim; and, if so, the dismissal of the original complaint did not dismiss the counter-claim; indeed, section 365 expressly declares that the defendant shall have the right of proceeding to the trial of his counter-claim without notice, although the plaintiff may

have dismissed his action, or failed to appear, and the practice is well settled accordingly. *Egulf* v. *Bryant*, 63 Ind. 365.

We have thus far reviewed this question as if the State had no right to the possession of escheated lands until after information found. We do not admit this to be the law, though we decide nothing upon the question. There seems to be a difference in this respect between cases where the alien dies intestate, leaving no one in possession, and where he makes a devise. In the former case, there are no known heirs, and no claimant appearing, the State, therefore, has title at once, and may enter and take possession. In the latter case, there are known devisees claiming the land; the State, therefore, must first establish her title to the land by information found, before she is entitled to possession. In this case, Joseph Emisberger died intestate, leaving no one in possession of the land. See the following cases: *Eden* v. *Doe*, 6 Blkf. 341; *Doe* v. *Laginly*, 1 Ind. 234; *Murray* v. *Kelly*, 27 Ind. 42; *Fisher* v. *The State*, 55 Ind. 150; *Halstead* v. *The Board of Commissioners*, 56 Ind. 363; *Dale* v. *Fisher*, 59 Ind. 530; *The State* v. *The Attorney General*, 63 Ind. 33; *Fairfax* v. *Hunter*, 7 Cranch, 603; *Wilber* v. *Foley*, 16 Pick. 177; *White* v. *White*, 2 Met. 185; *O'Havelin* v. *Dew*, Spencer R. 31; *Dew* v. *Colgan*, 4 Zabrieski, 566: *Rubuck* v. *Gardner*, 7 Watts. 455; *Farrar* v. *Dean*, 24 Mo. 16; *Cram* v. *Reeder*, 21 Mich. 24.

2. The appellants insist that the court erred in overruling their demurrer to the counter-claim of the State. Neither the demurrer, nor any ruling upon it, is in the transcript, nor is the sufficiency of the counter-claim put in question by an assignment of errors. There is, therefore, nothing upon this point for us to decide.

3. They also insist that the court erred in sustaining the several demurrers of the State to their several paragraphs of answer. There is nothing available in this point. The general denial of all the defendants was to the counter-claim. The evidence in support of the special paragraphs might have been, and was given under the general denial. No injury, therefore, could possibly result from sustaining the demurrers to the special paragraphs of answer to the counter-claim.

4. The instructions given by the court to the jury are rather complained of than discussed by the appellants; and the instruc-

tions refused by the court are claimed to be right, but are not supported by any argument; they are indeed scarcely more than mentioned. We do not therefore feel called upon to examine them in detail. If this opinion is right, then the instructions were right, and the instructions refused properly refused.

5. The only question fully insisted upon which arises under the motion for a new trial is the insufficiency of the evidence to support the verdict, or rather, that the verdict is contrary to the evidence, because it shows that the appellants had title in, and the right of possession to, the land. It is not claimed that the heirs of Joseph Emisberger have any title in the land, indeed it is practically admitted that they have abandoned their claim; but it is claimed that the appellants had, and have, a better right to the land than the State. Nor is it disputed that the State proved her claim as against the heirs of Joseph Emisberger, who originally brought the suit. This brings us to the examination of the title alleged to be in the appellants, and the evidence in its support.

It is claimed that the land was sold in February, 1862, to pay the taxes delinquent for the years 1859, 1860 and 1861, to Nathaniel West, and the certificates of purchase duly given to him by the county auditor; that West, in February 1864, assigned the certificate of purchase to John S. Reid, who upon the certificates received the auditor's deed of conveyance for the land; that John S. Reid conveyed the same in 1869 to Lafayette McCulloch in trust for the benefit of Nancy I. Reid; that John S. and Nancy I. Reid conveyed the same in 1873 to the appellant, Christian F. Smith, who now claims the title against the State.

The only evidence to prove this is as follows: the admission of fact that Joseph Emisberger had no personal property in Newton county during the years the taxes were delinquent upon the land; the conveyances of the land from the auditor to John S. Reid, from him to McCulloch, from McCulloch to Nancy I. Reid, and from Nancy I. and John S. Reid to Smith. There was no evidence that any taxes were ever legally assessed on the land, that any taxes were legally returned delinquent, nor that the land was ever sold for taxes to West at the proper time and place. Such a deed of conveyance of land sold for delinquent taxes cannot be upheld. *Ward* v. *Montgomery*, 57 Ind. 276; *McWhinney* v. *Brinker*, 64 Ind.

360. Besides, the legal title to the lands became vested in the State by escheat, on the 10th day of January, 1860, by the death of the alien, Joseph Emisberger, without inheritable blood.   Any assessment of taxes upon the land, or its sale for delinquent taxes, after that date, would be void as against the State.

It is claimed by the appellants, even though Smith has only a colorable title derived from the tax sale, that by section 250 of the act of December 21, 1872, (1 R. S., 1876, 127), the action is barred by limitation.   This section provides that "No action for the recovery of real property sold for the non-payment of taxes shall be brought, unless the same be brought within five years after the date of the sale thereof for tax, as aforesaid."   The State filed her counter-claim in this case in March, 1874, within two years after the passage of the act.   Although the tax sale in this case occurred nearly ten years before the State filed her counter-claim, yet, as there was no such law in force at the time the sale was made, the action will not be barred until after a reasonable time has elapsed from the taking effect of the act.   In the case of *Dale* v. *Frislin*, 57 Ind. 530, wherein this question was carefully considered, it was held that two years and two months after the law took effect was not an unreasonable time within which to allow the claimant to bring his action.   It must, therefore, be held that this case is not barred by the statute.

7. Lastly, the appellants ardently insist that the evidence proves a state of facts which shows that the State is estopped *in pais* from claiming the land against the appellee.

It may be conceded that the evidence fairly proves the following facts :

That, upon the death of Joseph Emisberger, January 10, 1860, the land at once escheated to the State.   Upon that day the right of the State to the land became complete.   The land was sold in February, 1862, to pay the taxes delinquent upon it for the years 1859, 1860 and 1861 ; that Nathaniel West was the purchaser of the land at the sale for taxes, and received the regular certificate of purchase therefor from the auditor; that he assigned these certificates to John S. Reid, who, in February, 1864, received the auditor's deed for the land; that, in December, 1869, John S. Reid conveyed the land to Lafayette McCulloch, in trust for the benefit

of Nancy I. Reid, in pursuance of which McCulloch, in 1872, conveyed the lands to Nancy I. Reid; that, in 1873, John S. and Nancy I. Reid sold and conveyed the land to Christian F. Smith, who has ever since been in possession thereof, claiming title thereto. All of these deeds of conveyance were duly recorded. Lasting and valuable improvements have been made upon the lands since its sale for taxes.

It may be conceded, too, that these facts show that the State, through her officers, sold the land for delinquent taxes which partly accrued after she became the owner of the land; that the proper public officer made a deed of conveyance of the land two years after its sale for taxes, at a time when the State owned the land, and that the State made no claim to the land until twelve years after the sale for taxes, and it must be presumed that she collected her taxes from it during all this time, while it was held and claimed adversely under the sale.

But, all these things conceded, it does not follow in our judgment that a case of estoppel *in pais* is made out against the State from asserting her title to the land by virtue of the escheat. In the absence of misrepresentation or fraud, of which there is no pretense, it is of the essence of an estoppel *in pais* that the party claiming the benefit of the estoppel shall have acted in ignorance of material and relevant facts within the knowledge of the other party, or which the other party ought, under the circumstances, to have known and communicated. No just claim can be made that the purchaser, at the tax sale in question, and the successive grantees under the tax deed, were not as well acquainted with the facts, and as able to learn them by inquiry, as the State, or her officers who had any part in making the sale and conveyance. To say the least, the parties had equal opportunity to know the facts, and were alike bound to know the law, and if there is any estoppel in the case, it is not *in pais*, but by deed. But it will hardly be contended that an auditor's deed, made in consummation of a sale for taxes, can bar the assertion by the State of any claim or right to the land sold. Neither by express words, nor by implication of law, does such a deed contain a covenant, either of seizure or warranty. It does not purport to convey any right, title or interest of the State in the land, other than its lien for the taxes assessed; and

none of the parties to the sale in question could have supposed that a transfer of the title held by escheat was intended. The deed must be deemed to have been intended simply for what it was, a tax deed, operative on the title of the parties against whom the taxes were assessed for which the sale was made, and conveying the title to the purchaser, if the proceedings were conducted in all essential respects in strict compliance with the law, but otherwise transferring to the purchaser only the lien which the State had held, or, if the State had no lien, the right to reclaim the amount of his bid. The tax deed is not even the equivalent of an ordinary quit claim, which conveys all existing right or title of the grantor, while the former, if in all respects regular, conveys only the right which the State has acquired authority to convey under the particular assessments of taxes for which the sale is made. It is not pretended that the sale under consideration was shown to have been in all respects regularly made, so as to be in itself operative as a valid conveyance of the legal fee to the grantee named in the deed. The effort is to help it out on grounds of estoppel; but, as already shown, this cannot be done. Estoppels are invoked for the purpose of preventing frauds; but to hold that the purchaser, at a tax sale, which he and the officers who conduct it suppose to be a tax sale only, may acquire by estoppel a transfer to himself of some other right or title of the State to the property, even though the existence of that right be at the time unknown, but whether known or unknown, not in contemplation of the parties, would be to promote fraud, and would impart fresh currency to the absolute expression that estoppels are odious. Such an application of the doctrine would be fraught with danger to the public interest, and would render the enforced collection of taxes on private property in which the State holds an interest as mortgagee or otherwise, impracticable without special legislation to meet the case, unless done at the sacrifice of interests or securities in most cases probably more valuable than the taxes.

But returning to the case in hand, if the purchaser at the tax sale knew of the escheat, he knew that the sale was illegal, the claim for the taxes being merged in the ownership in fee; if he did not know of the escheat, then he did not suppose that he was acquiring any right derived therefrom, and bought as a purchaser at an or-

4

dinary tax sale. The amount of his bid at the sale, and of all subsequent taxes paid, he is entitled doubtless to have repaid, and if he or his grantees have made lasting and valuable improvements, the statute furnishes them ample means for obtaining their value. In no view of the case can we discover in law or in fact any ground on which an estoppel against the State can rest; and whether under any circumstances, such an estoppel in such a case, could be caused by the conduct of public ministerial officers, we do not find it necessary to decide. On this subject the appellants have cited *Dezell* v. *Odell*, 3 Hill, 215; *The Commonwealth* v. *Andre*, 3 Pick. 224; Bigelow on Estp. 246; *Netto* v. *Carpenter*, 7 Cal. 507. While counsel for the appellee have cited Biglow 246; *Martin* v. *Zellerback*, 36 Cal. 315; *Foust* v. *Coon*, 40 Cal. 23; *People* v. *Brown*, 67 Ills. 435; *Commonwealth* v. *Andre*, 3 Pick. 224; *Enfield* v. *Parmit*, 5 N. H. 285; 10 Mass. 105; *Crone* v. *Reeder*, 25 Mich. 303; *Mattox* v. *Hightshu*, 39 Ind. 95; *Pettis* v. *Johnson*, 56 Ind. 151; *Graham* v. *Graham*, 55 Ind. 23; *Behlor* v. *Weyburn*, 59 Ind. 143; *Shoemaker* v. *Johnson*, 35 Ind. 33; *Fletcher* v. *Holmes*, 25 Ind. 458; *Junction R. R. Co.* v. *Harpold*, 19 Ind. 347; 30 N. J. 521; 38 Ill. 435; 31 Pa. St. 331; 34 Pa. St. 35; 7 Tex. 288; 29 Ill. 429; 10 O. 288.

Upon the general doctrine of estoppels see the following authorities: *Pemore* v. *Griffith*, 4 Bing. 231; *The Welland Canal Co.* v. *Hathaway*, 8 Ind. 480; *Cowen* v. *Jackson*, 4 Peters 1; *Lang* v. *Lang*, 4 Ind. 149; *Gatling* v. *Ballman*, 6 Ind. 289; *Conkling* v. *Smith*, 7 Ind. 107; *Barnes* v. *McKay*, 7 Ind. 301; *Morris* v. *Stuart*, 14 Ind. 334; *The State ex rel.* v. *Stanly*, 14 Ind. 409; *The Junction R. R. Co.* v. *Harpold*, 19 Ind. 347; *Burton* v. *Reeds*, 20 Ind. 87; *Berry* v. *Anderson*, 22 Ind. 36; *Fletcher* v. *Holmes*, 25 Ind. 458; *Love* v. *Wells*, 25 Ind. 503; *Joyce* v. *The First National Bank of Madison*, 62 Ind. 188; *Hadley* v. *The State, ex rel.* 66 Ind. 271; *The G. M. & H. T. Co.* v. *Sidener*, 40 Ind. 434; *McCabe* v. *Raney*, 32 Ind. 309.

Judgment affirmed with costs.

John S. Reid, *per se.*

S. P. Thompson for appellee.