BARNES *v.* McKAY and Wife.

*A.* died intestate, seized of several tracts of land. His widow was also the owner, in her own right, by inheritance from *B.,* of a tract of land adjoining *A.'s. C.* being about to purchase the interests of several of *A.'s* heirs, and supposing *A.* to have been the owner of said tract belonging to his widow, but a question having arisen in regard to the fact at the time of the execution of the conveyance, the widow assured *C.* that the tract so owned by herself was parcel of the lands left by *A.,* and *C.* accordingly reeceived a conveyance from said heirs of *A.,* describing the premises conveyed as their interests "in the land owned by *A.* at the time of his death."

*Held,* that the widow, even though she might have been ignorant of her legal rights in the land inherited from *B.,* was estopped from afterward asserting her title therein as to so much thereof as would have passed to *C.* by the conveyance, had the same been parcel of the lands left by *A.*

*Held,* also, that the circumstance that the representations of the widow were not in writing, was of no importance.

APPEAL from the *Hamilton* Circuit Court.

GOOKINS, J.—This was a bill in chancery by *McKay* and wife against *Jane Barnes* and others, setting forth the following facts:

*Tuesday,
December* 18.

Nov. Term,
1855.

BARNES
v.
McKAY.

One *Richard Bundren*, who, in his lifetime, owned an eighty acre tract of land, died, leaving the appellant, *Jane Barnes*, his only heir at law. She married *Nathaniel Barnes*, by whom she had issue thirteen children, of whom the wife of *McKay* is one. The other twelve are made defendants. *Nathaniel Barnes*, in his lifetime, owned an eighty acre tract, and two forty acre tracts, all adjoining the *Bundren* tract, of which he died seized. After his death, in 1847, *Isom Barnes*, one of his heirs, obtained from *William F. Barnes*, another of said heirs, a conveyance of all his interest in the lands owned by said *Nathaniel* at his death, without otherwise describing them. On the 2d day of *March*, 1848, he obtained from *Mary Wright*, another of said heirs, and her husband, a like conveyance of her interest. This deed describes the lands, and includes the *Bundren* tract. On the 17th day of the same month, *McKay* obtained a conveyance from *Isom Barnes*, and from *Albert* and *Henderson*, two other heirs, of their interest in said lands, *Isom*, besides his own share, conveying the other two he had previously acquired, making five shares in all, the consideration of the deed being 500 dollars, or 100 dollars per share. This conveyance described the lands no otherwise than as the lands owned by *Nathaniel Barnes* at his death. In *May* following, *McKay* obtained a conveyance from *Matilda Wright*, another heir, and her husband, of her interest in said lands. This deed describes it as the farm and real estate owned by *Nathaniel Barnes*, deceased, situated, &c., containing two hundred and forty acres, bounded, &c., setting out the abuttals, so as to include the *Bundren* tract. These shares amount to six-thirteenths of the whole. The bill charges a combination between *Jane Barnes* and said grantors to defraud *McKay*, by representing that the *Bundren* tract constituted a part of the estate of *Nathaniel Barnes*, and that his purchase included that tract. It also states that said *Jane* promised to release to *McKay* her claim to one-sixth part of the *Bundren* tract, if he would purchase said other six shares; and it alleges that the shares are worth one-third less in consequence of that

tract being not included in the estate.  *Albert*, *Isom* and *Henderson* are alleged to be insolvent and worthless.  It is further alleged that said widow and heirs have been requested to convey to *McKay* one-sixth part of said *Bundren* tract, which they have refused to do.  The bill seeks a conveyance of six-thirteenths of said tract, a partition of the other lands, and general relief.

The answers are not under oath.

*Jane Barnes* admits her title to the *Bundren* tract, and the title of *Nathaniel Barnes* to the other lands, in which she claims dower.  She admits that, subject to her claim, *McKay's* wife is entitled to one-thirteenth thereof; that *McKay* has purchased six shares therein as stated in the bill.  She claims the *Bundren* tract as her own absolutely. All other allegations of the bill are denied.

*Albert Barnes*, *Isom Barnes*, *Henderson Barnes*, *William F. Barnes*, and *Matilda Wright* and her husband answered, admitting the titles and conveyances as stated in the bill. They say that *McKay* knew the extent of their interests, at the time of his purchase, as well as they did.  They deny that they made any misrepresentations in relation to the *Bundren* tract, and say that *McKay* well knew the title to it; that he paid but a low price for the shares he purchased.  They deny all fraud.

The cause was submitted upon bill, answers and depositions, and a decree was rendered in favor of *McKay* against *Jane Barnes* for six-thirteenths of the *Bundren* tract, and in favor of *McKay* and wife for seven-thirteenths of the other lands in partition, and in favor of *Jane Barnes* for her dower in the whole, to be set off by commissioners.  *Jane Barnes* prosecutes this appeal.

We shall consider no question arising upon this record, except the one which the parties have discussed, viz., whether, under the circumstances, *McKay's* purchase extended to the *Bundren* tract.  In reference to that question, the appellant makes two points,—1. That the promise of the appellant to convey a part of that tract, being by parol, was void, by the statute of frauds.  2. That the evidence is not sufficient to sustain the decree.

Upon the first point, this is not a bill to enforce a contract of sale. It is true the bill states that the appellant promised *McKay* to convey to him a portion of said tract; but the promise is not stated to have been made upon a consideration, nor was it proved. The relief prayed is upon another ground, viz., that the appellant combined with the other defendants, who were selling their shares to *McKay*, in inducing him to believe that his purchase extended to the tract in question; and we must look into the evidence to see if it sustains that assumption.

So far as the heirs of *Nathaniel Barnes* attempted any particular description of the lands conveyed by them, the disputed tract was included. Two deeds were made, near the time of the principal purchase by *McKay*, one by *Mary Wright* and her husband to *Isom Barnes*, on the 2d of *March*, 1848, fifteen days before the principal purchase, and another by *Matilda Wright* and her husband to *McKay*, on the 21st of *May* following. Both these conveyances describe the property conveyed as the shares of the grantors in the real estate of *Nathaniel Barnes*, deceased, and then follow descriptions which include the *Bundren* tract. It is clear, therefore, that these grantors believed or pretended to believe that their father owned it.

The testimony which affects the appellant, is substantially this:

*Chitwood*, who wrote the deed for the five shares, testifies that while writing it a question arose between the grantors and *McKay*, in reference to the *Bundren* tract, when the grantors assured *McKay* that it belonged to their father, and that he had recovered it in a suit at law. *Chitwood* ceased writing, supposing the bargain would not be completed, when the parties agreed to go into another room, where they stated the appellant was, to have the matter in dispute decided. They returned, stating that the appellant said she did not know that she had any right to the disputed tract more than to the other lands of *Nathaniel Barnes;* and if she had, she did not wish to make any difference between her children in regard to it.

*Hanna*, a witness for the appellees, testified that the appellant and *William F. Barnes* told him that *McKay* had purchased an interest in the *Bundren* tract, the same as in the other lands.

*Fauset*, another witness, testifies to an interview between *McKay* and the appellant, and others of the defendants, in which the appellant admitted that she had assured *McKay*, at the time of his purchase, that he was buying an interest in all the tracts.

There was other testimony tending to show that some of the grantors, in selling an interest in the *Bundren* tract, were aware that they had no interest in it, and that they were acting fraudulently. The proof, however, does not connect the appellant with the fraud. It establishes only that she advised and encouraged the purchase, with the assurance that the tract in controversy was included in it.

The answer not being under oath, we think this testimony sustains the bill. It may be that the appellant was ignorant of her legal rights in respect to the tract in controversy; but although she may have been ignorant of her rights, she can not avoid the effect of her assurances to an innocent party that he might safely buy, for by them she assumed to know the facts on which her title rested. In the case of *Storrs* v. *Barker*, 6 J. C. R. 166, a married woman made a void devise in favor of her husband. The father, her heir at law, advised and encouraged an innocent party to purchase from the husband; and he was held to be estopped afterwards to assert his legal title, although the advice and encouragement were given in ignorance of his legal rights. The cases of *Hundsen* v. *Chayney*, 2 Vern. 150, and of *Teasdale* v. *Teasdale*, 13 Viner 539, quoted by the chancellor in *Storrs* v. *Barker*, p. 173, are both very similar to the case under consideration, and fully sustain our conclusion.

*Per Curiam.*—The decree is affirmed with costs.

*E. S. Stone* and *D. Moss*, for the appellant.

*W. Garver*, for the appellees.