Burk *et al. v.* Hill.

with instructions to sustain the motion for a new trial, and for further proceedings.

* * *

## BURK ET AL. *v.* HILL.

JUDGMENT.—*Estoppel.*—*Married Woman.*—Though the promissory note of a married woman, executed during her coverture, is void, yet if, in an action thereon, she make default and a judgment be rendered against her, she is forever estopped from denying or collaterally attacking it.

REAL ESTATE, ACTION TO RECOVER.—*Sheriff's Sale.*—*Decree Against Married Woman.*—If the real estate of a married woman be sold at sheriff's sale, on a decree rendered against her in an action upon a promissory note, and a mortgage on such real estate, executed by her during her coverture, and, on her failure to redeem the same, it be conveyed by the proper sheriff, to the purchaser at such sale, the latter may maintain an action to recover the possession of such realty from her.

SAME.—*Evidence.*—On the trial of such suit, evidence by the defendant, to show that she was a married woman at the time of the execution of such promissory note, is inadmissible.

SAME.—*Pleading.*—If, in an ejectment suit, the real estate in controversy be described in an exhibit attached to the complaint as part thereof, that is sufficient, though it be not described in the complaint itself.

SUPREME COURT.—*Practice.*— *Waiver.*—The failure of a party to an appeal to the Supreme Court, to refer in his brief to a question raised by his assignment of error, is deemed a waiver thereof.

From the Montgomery Circuit Court.

*J. McCabe, P. S. Kennedy* and *W. T. Brush,* for appellants.

*W. P. Britton* and *M. W. Bruner,* for appellee.

BIDDLE, J.—Complaint in two paragraphs, to recover the possession of land. The first paragraph is in the statutory form; the second sets forth the title of the complainant. Answer in general denial. Trial by the court, finding for appellee, and, over a motion for a new trial and exceptions reserved, judgment on the finding. Appeal.

The sufficiency of the second paragraph of complaint is questioned by an assignment of error, but the question is not discussed in the briefs of the parties—indeed, it seems to be waived. We therefore dispose of it at once by holding the paragraph good.

The appellee, as against Matilda Burk, claims title to the land under a judgment and decree of foreclosure, founded upon a promissory note and mortgage made by the said Matilda and others, rendered on default, and a sale of the land, and sheriff's deed, to the appellee. In her defence, upon the trial, Matilda offered to prove by Myrick Smith, a competent witness, that she was, and for the last thirty years had been, the wife of Jeremiah Burk. To this evidence the appellee objected. His objection was sustained by the court, to which ruling he excepted and reserved his exception. The purpose of the evidence, doubtless, was, to show that Matilda Burk was a married woman at the time she made the note which is the foundation of the decree under which the appellee claims title, and, therefore, that the note was void. This raises the question as to the validity of a judgment against a married woman, founded on a note made by her during coverture, and is, indeed, the main question discussed by the parties in the case.

It is conceded that the note of a married woman is void. From this premise, the counsel for the appellants insist, that a judgment founded upon such note is also void. They reason thus:

" Then if her contract is void because she has no power to make a contract, how can her mere silence, when she is sued, make it valid, so as to enable the court to render a valid and binding judgment on it? If she can not, by a positive act, make a binding obligation, how can her mere passiveness, under any circumstances, give validity to her contracts? Can she bind herself and subject her property to sale by mere silence, when she can not do it by a positive declaration or a positive act?" * * *

Burk *et al. v.* Hill.

Again: "But a married woman, being incapable of making contracts, can not make a contract by admitting that she made it. It is absolutely void, because she has no power to make it, and neither she nor a court can breathe into it the breath of life. If a married woman can not make a valid contract, she can not, either by her action, or her confession, or her silence, invest a court with authority to make it binding by a judgment. The court can not render a judgment with only a blank piece of paper for its foundation. There must be some admission, to give validity to the contract before the rendition of the judgment on it; and surely such an admission by a married woman can not make the note valid, if her signature to it can not. If a note is void when a judgment is rendered on it, the judgment will be void also. The court can not metamorphose a void note into a valid judgment. It can not make something out of nothing."

This logic is ingenious, and may be sound, as between the parties, while the note remains merely a note; but it will not hold, against persons who have been defrauded by such a note, nor against the public faith, due to judgments solemnly rendered by courts of record, having jurisdiction over the person and the subject-matter. And it is true that the silence, admission or affirmance, in any way, by a married woman, of her void note, can not make it a valid note; but her silence, admission, or affirmance, when she is sued, and has the power to speak, admit, or affirm—as she has in this State—will transmute her void note into a valid judgment—and for two very essential reasons: *first*, that in such cases she is estopped by the judgment thus admitted, and can never afterwards gainsay it; and, *second*, because the public faith, for the security of person and property, requires that all judgments, sufficient on their face, shall import absolute, unquestioned and unquestionable verity. If the appellant should prevail in this case, on the argument of her counsel, she would perpetrate a palpable fraud; and once

adopt what is contended for as a rule, and, instead of establishing rules of general justice, securing human rights, and upholding public faith, we should adopt a system of fraud, loosen all notion of right, and undermine public confidence in judicial proceedings. It is quite true, as the counsel say, that "The court can not render a judgment with only a blank piece of paper for its foundation;" but a void note is a very different thing from a blank piece of paper, and is a potent instrument in the perpetration of fraud. The one, on its face, is nothing but paper; the other, on its face, is a valid note. No eye can discover the defect. Its invalidity rests in the silence of the law, and can be known only to those who know the facts; and when the law calls upon the party who makes the note—fair upon its face—to state the facts, and they have the opportunity and the power to speak, they must speak, or forever hold their peace. The appellant in this case had this notice, had the opportunity and power to speak; she remained silent, allowed the judgment to go against her, with all the facts in her knowledge to prevent it, had received the consideration for the note, and, after the judgment, stood by, took no steps to prevent the sale, allowed the appellee to purchase the land, and thus invest his money therein, and now, years afterwards, when possession of the land is sought against her, says that the note she made was void! A system of judicature that would uphold such a transaction would render courts of justice machines of fraud.

The counsel for the appellants cite two cases in support of their views. The first is *Morse* v. *Toppan*, 3 Gray, 441. The whole of the opinion is expressed in the following words:

"SHAW, C. J.—The facts being agreed, they are to be taken as of the same legal effect, as if pleaded. The fact that the defendant was a married woman, when the judgment was rendered against her, would alone be a good bar to this action. It would be the same as if she had entered

into an obligation by bond at the same time; to which she might have pleaded *non est factum*. A judgment is in the nature of a contract; it is a specialty, and creates a debt; and to have that effect, it must be taken against one capable of contracting a debt."

What induced a respectable court to pronounce such an opinion as this, or upon what ground it rests, is more than we know or can perceive. To us, to place a judgment upon no higher ground than an executory bond, to which *non est factum* might be pleaded, and to say that a judgment, to be obligatory, must be taken against one capable of contracting a debt seems to be legal absurdities. And the case cited in this opinion to sustain it gives it no support whatever. *Faithorne* v. *Blaquire*, 6 M. & S. 73. It was a case where the court, on motion, set aside a judgment on a warrant of attorney, given by a former court, although she had been divorced *a mensa et thoro*. This is quite different from attacking a judgment collaterally to defeat an action of ejectment.

The other case cited by the appellant is *Griffith* v. *Clarke*, 18 Md. 457, the ground of which was, that a married woman, in that State, was not competent to employ an attorney. And in this case, not a single authority is cited. It stands naked and alone.

The counsel also refer us to a decision recently made by the Supreme Court in Illinois, but they did not cite it by name or reference, and we are not able to find any thing of the kind. They also say:

"A judgment may be annulled, and execution upon it enjoined, when it was procured by fraud."

Certainly it may, but fraud, in the cause of action upon which it is founded, can not be pleaded against it,—it must be fraud in procuring the judgment; and for a very sufficient reason : because, in such a case, the fraud is not accomplished until the judgment is rendered. There is no analogy whatever between such cases and the one before us.

Upon the two cases cited, and the argument of the counsel, they ask us to overrule several well considered cases deciding the question here discussed. To sustain their views, we should not only have to overrule a number of established cases, which, in some instances, have become rules of property, but also to violate, in a greater or less degree, the principles upon which a long line of decisions, touching judgments, is founded, running through the entire history of the State. *Stare decisis et quieta movere.* *Fischli* v. *Fischli,* 1 Blackf. 360; *Stipp* v. *The Washington Hall Co.,* 5 Blackf. 16; *Horner* v. *Doe,* 1 Ind. 130; *Laney* v. *Laney,* 4 Ind. 149; *Gatling* v. *Rodman,* 6 Ind. 289; *Barnes* v. *McKay,* 7 Ind. 301; *Arnold* v. *Stanfield,* 8 Ind. 323; *Spaulding* v. *Thompson,* 12 Ind. 477; *Wiesman* v. *Macy,* 20 Ind. 239; *Preston* v. *Sandford's Adm'r,* 21 Ind. 156; *Evans* v. *Ashby,* 22 Ind. 15; *Fletcher* v. *Holmes,* 25 Ind. 458; *Buell* v. *Shuman,* 28 Ind. 464; *Abdil* v. *Abdil,* 33 Ind. 460; *Comparet* v. *Hanna,* 34 Ind. 74; *Shumaker* v. *Johnson,* 35 Ind. 33; *Smith* v. *Dodds,* 35 Ind. 452; *McDaniel* v. *Carver,* 40 Ind. 250; *Elson* v. *O'Dowd,* 40 Ind. 300; *Gavin* v. *Graydon,* 41 Ind. 559; *Wagner* v. *Ewing,* 44 Ind. 441; *Landers* v. *Douglas,* 46 Ind. 522; *Johnson* v. *Miller,* 47 Ind. 376; *McCaffrey* v. *Corrigan,* 49 Ind. 175; *Greenup* v. *Crooks,* 50 Ind. 410; *King* v. *Roe, ante,* p. —, and *Dandislet* v. *Benninghof, ante,* p. —.

The appellants urge several minor questions, such as, that it appears on the face of the complaint, that Matilda Burk was a married woman when she made the note; that the complaint does not describe the land, (but it is described in the mortgage, which is made an exhibit,) and therefore the court had no jurisdiction of the subject-matter of the suit; that the ejectment suit should have been enjoined on the complaint of the appellant; that the default in the judgment on the note and mortgage should have been set aside, and the appellant allowed to plead to the action; all of which fall within the main question we

have decided, namely, that the judgment is valid on its face, and need not therefore be noticed in detail.

It is claimed, also, that the levy was excessive, that the property should have been sold in parcels, and that the evidence does not support the finding, as to damages; but we find no serious objection to the record on these points.

The judgment is affirmed, with costs.