Filed Sept. 20, 1893.

---

No. 16,289.

THE LOUISVILLE AND JEFFERSONVILLE FERRY COMPANY
*v.* NOLAN.

COMMON CARRIER.—*Passenger.*—*Personal Injury.*—*Third Parties Contributing to Injury.*—*Damages.*—*Defenses.*—In an action by a passenger against a common carrier, for injuries sustained while being so carried, by the negligence of the company's servants, the company will not be permitted to show, in defense, that a third party, or parties, contributed to the injury, or that it stood by and permitted others to take charge of its affairs, thereby causing injury to the person to whom it owed the duty of a carrier to its passenger.

The Louisville and Jeffersonville Ferry Company v. Nolan.

NEGLIGENCE.— *Proximate Cause of Injury.*— *Definition.*—Proximate cause is any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which the result would not have occurred.

From the Floyd Circuit Court.

*A. Dowling* and *J. K. Marsh*, for appellant.
*C. L. Jewett* and *M. Z. Stannard*, for appellee.

DAILEY, J.—The amended complaint in this action is in two paragraphs, for damages for personal injuries alleged to have been sustained by the appellee, while aboard the defendant's ferry boat, "Shall Cross," in the Ohio river, at Jeffersonville. The specific acts of negligence charged in the first paragraph, among others, are that the appellant failed to make the temporary stanchion, erected on the boat, secure, and that its servants caused the stage plank to come in violent contact with it, knocking it down and thereby striking and injuring the appellee. The negligence attributed to the appellant in the second paragraph consisted in its omission to fasten the stanchion securely at either end, and in permitting the stage plank to come in sudden and violent contact with the stanchion, thereby causing the injury of which complaint is made. A demurrer was filed to each paragraph of amended complaint, which was overruled, and exceptions taken by the appellant. The appellant answered, denying the matters stated in each paragraph of the complaint. The cause was removed to Floyd county, where it was tried by a jury, and a special verdict returned, assessing appellee's damages at five thousand dollars. There was a motion for a new trial, which was overruled, and the appellee excepted thereto. The appellant moved the court for judgment in its favor on the special verdict. The court overruled the motion, and the appellant excepted. Judgment was rendered on the special verdict,

in favor of the plaintiff below.     Appellant excepted, and presents his appeal to this court.

The evidence is set out in the bill of exceptions.

In this court, the appellant has assigned four errors:

First.  The ruling of the court on the demurrer to the first paragraph of amended complaint.

Second.  The ruling of the court on the demurrer to the second paragraph of amended complaint.

Third.  Overruling the motion for new trial.

Fourth.  The refusal to render judgment in its favor on the special verdict.

The first and second of the alleged errors are not referred to in appellant's brief; therefore, under the rules of practice of this court, they are waived (*Western Union Tel. Co.* v. *Ferris*, 103 Ind. 91), and the question of the sufficiency of the complaint is not raised in this court.

In the discussion of the fourth assignment of error, the appellant says:  "Notwithstanding the effort of the appellee to make the verdict cover every fact necessary to entitle her to judgment, the facts found by the jury fall short of that result, and upon that verdict the motion of the appellant for judgment ought to have been sustained."

This is the only discussion by it as to the insufficiency of the facts found or of the evidence to sustain the verdict.  Appellant has not specified what fact is wanting in the special verdict, nor wherein the verdict is defective, and the court discovers none, after having examined the record with some degree of care.  Under so limited a discussion of so important an assignment, the court feels authorized in assuming that there is a waiver on the part of the appellant to enter into a discussion of the fourth assignment of errors, and will not explore the record further for errors not specifically pointed out. *Burk* v. *Hill*, 55 Ind. 419.

For the reasons stated, appellant will be deemed to seek a reversal, solely upon the matters discussed in the third assignment of error, viz: The alleged error of the court in overruling the motion for a new trial. Under this assignment, the learned counsel for appellant have, at some length, urged that appellee sustained her injuries on account of the acts and conduct of her fellow-passengers, and not on account of the acts or conduct of the appellant, or of any of its servants, agents or employes. The admitted facts in the case disclose that at about eight o'clock on the evening of July 18, 1888, a church society, known as the ''Debt Paying Society of St. Augustine's Catholic Church,'' having chartered appellant's excursion boat, ''Shall Cross,'' went on an excursion from Jeffersonville about twelve miles up the Ohio river. The crew of the boat, employes of the appellant, consisting of five persons, had charge of the vessel, which had been chartered and paid for by the society.

The church society sold tickets which entitled the persons holding them to become members of the excursion party, and the appellee, having purchased a ticket, was received upon said boat, and went upon said trip. Upon its return to Jeffersonville, about midnight, the steamer landed at the wharf, and the excursion party was put ashore about one hundred yards up stream from the regular ferry dock maintained for that purpose. Had they landed the vessel at the regular dock, the passengers, in leaving the boat, could have stepped from the deck with entire safety, thereby avoiding the necessity of using a stage plank for the purpose of exit therefrom. After the steamer had landed at the place indicated, and some parties had put out the stage plank on which about six hundred people had disembarked in safety, leaving on board probably seventy-five persons, appellee came

from the upper deck, preparatory to leaving the vessel, and stepped to within four or five feet of the stage plank. Just at this time the steamer "Sunshine," another of appellant's excursion boats, having delivered its guests, drew up alongside the steamer "Shall Cross," thereby disturbing the water, and causing the last-named vessel to start in motion and drop down stream, tightening her lines. The parties, in adjusting the stage plank, had omitted to run it out far enough to cause the end resting on the deck to clear one of the temporary stanchions standing near the gateway, and as the boat dropped down stream, the end of the stage plank came in contact with the stanchion, knocking it down and injuring the appellee in the manner stated in her complaint.

From the foregoing summary of uncontested facts, the following propositions are established:

First. The appellant, on the occasion referred to, was a common carrier of passengers.

Second. The appellee was a passenger on the steamer "Shall Cross."

Third. The injury occurred by reason of the accident complained of.

It is the settled law of this State that a carrier of passengers is not an insurer of the safety of its passengers, but it is required to exercise the highest degree of care to secure their safety, and it is liable to a passenger, who is himself without fault, for any omission or failure to exercise this power, and for the slightest neglect of duty in this respect. *Jeffersonville R. R. Co.* v. *Hendricks, Admx.*, 26 Ind. 228; *Grand Rapids, etc., R. R. Co.* v. *Boyd*, 65 Ind. 526; *Pittsburgh, etc., R. R. Co.* v. *Williams*, 74 Ind. 462; *Terre Haute, etc., R. R. Co.* v. *Buck, Admx.*, 96 Ind. 346; *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551.

The question of negligence is largely dependent upon the

relationship which the parties sustain to each other, and duty. Thus, in case of common carriers, it has been a rule of the law, from the earliest times, that in consideration of the great danger to human life consequent upon the neglect of duty, they must exercise the greatest practicable care for the safety of their passengers. 16 Am. and Eng. Encyc. of Law, 427.

"The passenger is entitled not only to be properly carried, but he must be carried to the end of the journey for which he has contracted to be carried, and must be put down at the usual place of stopping." "It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so." *Terre Haute, etc., R. R. Co.* v. *Buck, supra.*

It is a maxim that the law looks to the proximate, and not at the remote, causes of an injury. Out of the application of this maxim grows the liability or nonliability of a defendant charged with the infliction of an injury by his negligence. Unless the alleged negligence of the defendant was the proximate cause of the injury of which plaintiff complains, there can be no recovery. For consequences of which his act or omission was only a mere condition, or remote cause, the defendant is not liable. To constitute actionable negligence, there must be not only a casual connection between the negligence complained of and the injury suffered, but the connection must be a natural and continuous sequence, unbroken by any other cause. Proximate cause is defined to be any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which the result would not have

occurred. In the construction of this rule, in many cases, what seems a remote cause is held proximate, because, in examining the chain of causation, no other proximate cause appears, supposed intervening causes being found merely conditions or occasions, and not efficient causes. In this class of cases, conditions and occasions are often, but erroneously, insisted on as proximate causes. *Sherman* v. *Stage Co.*, 24 Iowa, 515; Storey on Bailments, sections 241, 242.

"Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original wrong are natural; and for such consequences the original wrongdoer must be held responsible, even though he could not have foreseen the particular results, provided that by the exercise of ordinary care he might have foreseen that some injury would result from his negligence. No other proximate cause being found the original wrong is held proximate, and no wrongdoer ought to be allowed to apportion or qualify his own wrong; and as a loss or injury has actually happened while his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of loss, if that cause was put in operation by his own wrongful act. But of course, if the original act of the defendant, although it was the proximate cause of an injury, * * was not negligent, the fact that it was the proximate cause of such injury will not warrant a recovery." 16 Am. and Eng. Encyc. of Law, 438, 439.

This court, in discussing the question, in *Terre Haute*, *etc.*, *R. R. Co.* v. *Buck*, *supra*, adopted the language of a Maryland court, and said: "The law is a practical science, and courts do not indulge refinements and subtleties, as to causation, that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause, in producing a

given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned." "To entitle such party to exemption, he must show not only that the same loss might have happened, but that it must have happened, if the act complained of had not been done." "It is no defense in an action for a negligent injury, that the negligence of a third person, or an inevitable accident, or an inanimate thing, contributed to cause the injury of the plaintiff, if the negligence of the defendant was an efficient cause of the injury. * * In such cases, the fact that some other cause operates with the negligence of the defendant in producing the injury, does not relieve the defendant from liability. * * His original wrong, concurring with some other cause, and both operating proximately, at the same time in the production of the injury, he is liable to respond in damages whether the other cause was a guilty or innocent one. In cases of this character the negligence of two independent persons may concurrently result in injury to a third, in which event the injured party may maintain his action against either or both of the negligent parties." 16 Am. and Eng. Encyc. of Law, 440–443.

It is elementary that natural causes are always proximate.

Again, it is no answer to an action by a passenger against a carrier that the negligence or trespass of a third party contributed to the injury. *Eaton* v. *Boston, etc., R. R. Co.*, 11 Allen, 500; *Pittsburgh, etc., R. W. Co.* v. *Caldwell*, 74 Pa. St. 421; *Spooner* v. *Brooklyn, etc., R. R. Co.*, 54 N. Y. 230.

Counsel for appellant, recognizing the rules above stated as being applicable for the guidance of courts in proper cases, urge that this cause does not come within

the rules laid down; that "the evidence shows that the proximate cause of the accident to the appellee was the collision of the stage plank with the stanchion"; that "on no other ground can the fall of the stanchion be explained"; that "there was no proof that the stanchion was not properly and sufficiently fastened to resist any of the ordinary and probable shocks or strains to which it was likely to be exposed"; that "it did stand firm and secure during the entire voyage"; that "it required a powerful blow, from an unusual and unexpected source, to drive it from its position"; that "there was no proof of any negligence on the part of the appellant, which occasioned the collision between the stage plank and the stanchion," and that the appellee sustained her injuries on account of the acts and conduct of her fellow-passengers, and not on account of the acts or conduct of appellant, or any of its servants, agents or employes; that the crowd of passengers, during the necessary absence of the crew, and while they were engaged in the performance of their duties, seized the stage plank and ran it partly out upon the bank while the boat was still in motion, and so placed it that it came in contact with the stanchion, knocking it down upon the person of the appellee."

There is considerable testimony tending to support this theory, but there is just as positive testimony that the stanchion which fell upon and injured the appellee was placed in the position it occupied while the upper deck was heavily loaded, so that owing to the pressure from above it could not be, and was not, made perpendicular; that it leaned in the direction of Kentucky, at an angle of eighty-five degrees, and that the end next to the floor was never fastened or adjusted thereto; also, that the stage plank was thrown out by the crew, and the occupants of the boat were permitted to cross thereon.

Harry Strauss, a witness for appellee, says: "I reside at Jeffersonville, Indiana, and have lived there all my life. I knew the plaintiff; she lived at Jeffersonville, and has lived there for several years; don't know how long. She lived there on the 18th of July, 1888. I remember the excursion on the "Shall Cross" on that day. I was down at the river in the evening before the excursion started. The "Shall Cross" was at the landing at Jeffersonville. It was sometime in the afternoon. I was on the boat. Saw a temporary stanchion, which had been put in to support the upper deck. It was not perpendicular. It leaned, and was not fastened at the bottom; it leaned towards the lower deck. I saw it again, when the crowd was in the boat, in the same position. It was leaning all the time, and was not straight up and down. The excursion was given by St. Augustine Society, and they went up the river on the "Shall Cross." The boat left Jeffersonville at 8 o'clock in the evening. There was a crowd on board, some seven hundred or eight hundred people. I did not see the stanchion fall. I was on the forward part of the boat. I saw the plaintiff, Florence Nolan, on the boat, while it was going up the river. No change was made in the position of the stanchion from the time it was first put up."

George Klespies, for appellee, testified as follows: "I saw the stanchion before the accident. I saw it put up. Ad. Northum put it up. He and John Noon, and a colored man, put it up. It was put up fifteen or twenty minutes before the boat started. Some eight hundred people went on the excursion. About three hundred of them were on the boiler deck. The shoulder of the stanchion was put in an opening at the top in a stringer, and it was struck about three licks with a maul. It was not driven up straight. I noticed it when I was with my girl. I said: Come away; you'll get killed."

. James Maher also testified that he saw the stanchion put up by one of the ferry company's men, at a time when there were two hundred or three hundred people on the upper deck; that it was set at an angle of eighty-five degrees; that they took a sledge hammer and hit it as hard as they could, but never got it straight, and went off and left it; that there was no fastening on the bottom to hold it in position, and no evidence that it had been handled or nailed to so hold it." Witness further says: "I would not have paid much attention to it, only a friend of mine said: You had better get away from there; that thing will fall and kill somebody." "Saw the stanchion on the floor after the accident."

The testimony of Howard and Irwin, witnesses for appellant, was that the temporary stanchion should have been placed in position before the weight was placed on the upper deck.

Hon. Frank B. Burke testified that the crew on the boat ran out the plank, which seems to have been a necessary means of escape at that dock.

James Maher swore that the boat had been landed ten minutes before the accident happened.

Maud Craig testified that of the 700 or 800 people, originally on the boat, but about 75 remained when the accident happened, which would indicate that appellee was proceeding to leave with due care and caution when the injury occured, and that she did not rush or crowd herself into danger.

Bud Miller, the pilot and master of the boat, testified that, after landing the boat, he left the pilot house and went down stairs, and the stage was out, some two hundred people having left the boat; that he gave no order to pull in the plank, but asked them to go off slowly and not crowd the plank.

We refer to this much of the testimony to show that

plaintiff's theory was supported by a line of witnesses. The credibility and weight to be given their statements were to be determined by the jury.

The general rule is that questions of fact are to be submitted to a jury, and this includes not only cases where the facts are in dispute; but also the questions as to the inference to be drawn from such facts after they have been determined. The element of ordinary care must, from its very character, require the decision of a jury, when asked for, except where there is a violation of statutory duty, or where the facts are undisputed, and but one inference can reasonably be drawn from them, and courts are reluctant to disturb verdicts under such circumstances.

In addition to what is above stated, while the burden rested on the appellee, in the first instance, to prove all the material allegations of her complaint, yet the authorities are uniform on this subject. The fact that a passenger suffers an injury while upon a railroad train, will ordinarily raise a presumption that the company is negligent. *Jeffersonville R. R. Co.* v. *Hendricks, supra.*

The contract between the carrier and passenger, among other just and reasonable rules, requires that the carrier should take the burden of showing that it used all proper precautions for the passenger's safety. *Bedford, etc., R. R. Co.* v. *Rainbolt, supra.*

Public policy requires of the carrier, in cases like this, that it shall affirmatively show that it has taken all usual and practical precautions to maintain its carriages and appliances for carrying, in safe condition. *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264; *Louisville, etc., R. W. Co.* v. *Hendricks,* 128 Ind. 462; *Kentucky and Indiana Bridge Co.* v. *Quinkert,* 2 Ind. App. 244.

Where a passenger, rightfully on a train, is injured by the breaking down of a bridge, the presumption is that

the carrier was guilty of negligence, and the *onus* is on it to prove the contrary. *Louisville, etc., R. W. Co.* v. *Thompson, Admr.*, 107 Ind. 442; *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551.

The appellant, having assumed the duty to carry appellee safely, as a matter of law it will not be heard to say that, having assumed this obligation, it stood by and permitted others to take charge of its affairs and thereby injure the person to whom it owed the duty. *Eaton* v. *Boston, etc., R. R. Co., supra; Spooner* v. *Brooklyn, etc., R. R. Co., supra; Pittsburgh, etc., R. W. Co.* v. *Caldwell, supra.*

From the facts established in this cause, by the appellee, and the authorities cited, it was clearly the duty of the appellant to prove a complete negative of the averments in these respects in order to defeat the appellee's right to recover, and having failed to do so, there is no error in overruling the motion for a new trial.

The judgment ought to be affirmed. It is therefore ordered, upon the foregoing opinion, that the judgment be, and it is, in all things affirmed, with costs.

Filed Sept. 21, 1893.