## Indiana Union Traction Company v. Smalley.

[No. 6,497.   Filed June 23, 1909.]

1. Interurban Railroads.—*Passengers.*—*Who are.*—*Question for Jury.*—Evidence showing that the plaintiff entered defendant interurban railroad company's car while it was standing at the customary place for receiving passengers, that the conductor was late and that the motorman started without any conductor, that the plaintiff was ready and willing to pay his fare, that there was no one to whom to pay it, that the motorman directed him to alight at a certain place, and that while doing so the car gave a sudden jerk, throwing him upon the street, to his injury, sustains a verdict that the plaintiff was a passenger. p. 174.

2. TRIAL.— *Instructions.— Interurban Railroads.— Passengers.— Care.*—An instruction that a carrier of passengers, though not an insurer, must exercise the highest degree of care in receiving, transporting and discharging passengers, and that it is liable to a passenger, without fault, for the slightest neglect of duty, does not assume that the plaintiff was a passenger. p. 176.

3. TRIAL.— *Instructions.— Interurban Railroads.— Passengers.— Care Toward.*—An instruction, in an action against an interurban railroad company for personal injuries, that carriers of passengers were required to exercise the highest degree of care for the safety of their passengers, and to discharge them safely, would not mislead the jury into thinking that the instruction was inapplicable to interurban railroads, especially where other instructions followed showing the rights of the parties in detail. p. 177.

4. TRIAL.—*Instructions.—Limiting.—Duty of Parties.*—Parties desiring a general instruction limited to the particular case should prepare such an instruction and properly request the giving thereof. pp. 178, 179.

5. TRIAL.— *Instructions.— Interurban Railroads.— Passengers.— Who are.—Liability to.*—An instruction that if plaintiff entered defendant interurban railroad company's car while it was standing at the customary place for receiving passengers, that he was ready and willing to pay his fare, but that there was no one to receive same, he is a passenger and the company is liable for the slightest neglect of duty toward him in transporting and in providing proper "means" for him to alight, is proper; and if the company desired the question of plaintiff's good faith submitted, it should have asked for a modification thereof; and the word "means" instead of the word "opportunity" was not misleading, there being no question but that the car was provided with proper appliances. p. 178.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Jacob Smalley against the Indiana Union Traction Company. From a judgment on a verdict for the plaintiff for $500, defendant appeals. *Affirmed.*

*J. A. Van Osdol, W. A. Kittinger* and *Carroll & Dean,* for appellant.

*J. F. Charles,* for appellee.

MYERS, J.—The appellee recovered judgment for personal injuries suffered through the alleged negligence of appellant. The overruling of a motion for a new trial is the only error

assigned. Under this assignment the appellant questions the sufficiency of the evidence to sustain the verdict and the correctness of certain instructions given to the jury.

The evidence in some material respects was conflicting. There was evidence upon which the jury might have found that on or before November 10, 1905, appellant was a corporation engaged in operating a system of electric street and interurban railway lines in the city of Marion, Indiana, for the carrying of passengers for hire, and had in its employ as motorman one Oliver. There was a line of the appellant's railway running south on Washington street in that city to and beyond Thirty-sixth street. It branched at Thirtieth street, one branch running east on that street. Appellee was about fifty years old, and was a meat cutter for Haines & Co., whose place of business was at the northwest corner of Washington and Thirty-sixth streets. He had worked there more than four weeks. He left his home on Tenth street on the morning of the accident in time to catch a car which started about 5 o'clock. He entered that car at Washington and Tenth streets, paid his fare, and got off at Thirtieth street. A car, called the "College car" was standing there headed south. That was the customary stopping place for the College car and other cars of the appellant, to take on and discharge passengers, as the appellee knew. It was a closed car, having a door and a platform at each end, inclosed by a vestibule. The car was operated by electricity. Oliver, the motorman, was on the car, and he and appellee were acquainted with each other. Appellee, since he had been working for Haines & Co., had ridden with Oliver on his car a number of times. There was a boy on the car, but no employe of the appellant, except Oliver. There was a conductor for this car, but he was not on it during the time appellee was on the car. There were glass windows between the end platforms and the inside of the car, so arranged that the motorman on the front platform could see most places on the rear platform. It was a

reversible car, the platforms being substantially alike. Before getting upon the car the appellee asked the motorman if he was going south, and he answered in the affirmative. Appellee then boarded the car at the north or rear end, and walked through it to the front end. The first thing the motorman said to him was that he had waited on his conductor too long, and would go on without him, and he immediately started the car south. The motorman stopped the car at an intermediate point, and the boy who was on the car got off. There was no place in or about the car arranged for depositing the fare or tickets of the passengers. No one asked the appellee for any ticket or other compensation. When he got on the car he expected to pay his fare in money, and was able to do so. He never refused to pay his fare. He was acquainted with the duties of conductors on similar cars with reference to taking up fares and assisting passengers. He testified that it was their duty to collect fares, and to signal the motorman to stop and start the cars for passengers to get on and off. The motorman knew where the appellee worked, and while the appellee was standing in the front part of the car, talking with the motorman, the motorman told him to go to the rear of the car and get ready to get off, and he would let him off when he got to Haines's. Appellee thereupon walked back through the car and out of the door, and prepared to get off. He was standing with both feet on the step of the car on the west side, one step down from the vestibule platform and about twelve inches above the asphalt street. When he went out on the rear platform the car was not quite a square from Haines's place, and was running at less than ordinary speed. He was carrying a small bucket in his right hand. The car ran slowly until it was less than one hundred feet north of Haines's place. Appellee was holding to the handhold on the car with his left hand. The car jerked, and the jerking caused him to lose his hold, and he was thrown back against the rear end of the car and from thence upon the street. He struck the street at full

length, his head, he thought, striking first. He was severely injured. The usual stopping place of this and other cars going south was on the south side of Thirty-sixth street, which was about sixty feet wide. It was not yet daylight when he was injured, but there were lights in the car.

The appellee, in that portion of his brief under the heading of "Points and Authorities," makes some statements and cites some authorities relating to mere licensees, trespassers and persons attempting to procure transportation under circumstances amounting to fraud upon the carrier; yet in its argument, the appellee concedes that under the circumstances the company owed the appellee ordinary care.

We see no such conclusive indication of fraud as would authorize this court upon such question to set aside the determination of the jury. We are of the opinion that under the facts in evidence the jury was justified in regarding the appellee as a passenger entitled to that high degree of care due from a common carrier of passengers.

In instruction four, given at the request of the appellee, it was stated that a carrier of passengers, while not an insurer of the safety of its passengers, is required to exercise the highest degree of care to secure their safety, and it is liable to a passenger, who is himself without fault, for an injury caused by an omission or failure to exercise such care, or for the slightest neglect of duty in this respect; that the passenger is entitled to be carried properly, and it is the duty of the carrier to provide for the safe receiving and discharging of its passengers; that it is bound to exercise the strictest vigilance not only to carry its passengers to their destination, but also to discharge them safely upon their arrival at such destination. Counsel object to the instruction, on the alleged ground that it ignores the rule that the high degree of care required of a public carrier toward its passengers must be consistent with the mode of conveyance, and is the highest practicable degree of care; and, also, that as applied to this case it proceeds

upon the assumption that the relation of carrier and passenger existed between the parties when that fact was in dispute. The instruction was a general statement of propositions of law, and assumed no fact as established in this case.

The jury scarcely could regard the instruction as directing their consideration to the degree of care applicable to any other kind of conveyance than that to which the case 3. on trial related, for, after the general statement, reference was made to the discharge of passengers at their destination, the very matter involved in this case. Besides the statement in this instruction that the carrier is not an insurer of the safety of its passangers, the court, at the request of the appellant, instructed the jury that if it found from the evidence that the injury to the appellee was purely accidental, its verdict should be for the defendant; and in another instruction, asked for by the appellant and given, it was stated that unless the appellee had proved by a preponderance of the evidence that at the time he fell from the car it gave a sudden jerk, he could not recover, and that if the evidence showed that the car, at the point where the plaintiff undertook to alight or fell from the car, was so running along in its usual way, without any sudden jerk or movement, its verdict should be for the defendant upon this issue. All the instructions requested by appellant were given. The jury would of course consider that the carrying of passengers by an electric car was a lawful business, and the jury would not be able to infer that the court intended to tell them that the appellant was obliged to exercise a degree of care incompatible with the carrying on of that business.

In *Louisville, etc., Ferry Co.* v. *Nolan* (1893), 135 Ind. 60, 64, it was stated by the court as "the settled law of this State that a carrier of passengers is not an insurer of the safety of its passengers, but it is required to exercise the highest degree of care to secure their safety, and it is liable

to a passenger, who is himself without fault, for any omission or failure to exercise this power, and for the slightest neglect of duty in this respect.''

If the appellant had requested an instruction on this subject containing the phrases, for the absence of which appellant criticizes instruction four, and unobjectionable in other respects, it would have been proper for the court to give it, but we are of the opinion that the instruction given at appellee's request was not materially defective. *Indiana Union Traction Co.* v. *Thomas* (1909), *post,* 468.

The seventh instruction, given at appellee's request, is criticized by the appellant. It is as follows: ''The stopping of a street-car, that is being operated by a carrier of passengers, at a point on a street or highway where such cars usually stop for the purpose of receiving passengers, constitutes an invitation to those in waiting to take passage if they desire; and if you find from a fair preponderance of the evidence in this case that said College car named in plaintiff's complaint was so stopped at the intersection of Thirtieth and Washington streets in the city of Marion, that said point was a customary and usual stop for receiving passengers on said car, and was so known to the plaintiff, that plaintiff took passage on said car at said point while it was so standing, with the intention of becoming a passenger thereon, and with the intention of paying the usual and customary fare charged passengers thereon, and that he was then and there ready, able and willing to do so, that no fare, ticket or other compensation was at any time demanded or requested of the plaintiff, and no place provided in or about said car for the purpose of depositing such fare, ticket or compensation, and that plaintiff at no time refused to pay his fare—then I charge you that he was, while so riding on said car, entitled to the exercise by the defendant, its servants and employes, of the highest degree of care to provide for his safety in being transported upon said car

to his destination, and to proper means of alighting from said car; and any neglect in the performance of such duty, by reason of which he was injured, all as averred in the plaintiff's complaint, would entitle him to recover, unless his negligence contributed to the injuries complained of.''

What we have already said applies to this instruction. It is specially objected to by appellant, on the ground that it ignores the factor of good faith on the part of the passenger. The jury could not have been misled in this respect by the instruction. If the appellant desired a more specific instruction in this regard it should have asked it. The instruction is also criticized because of the use therein of the word ''means,'' and it is suggested that the court should have used the word ''opportunity.'' The jury could not have been misled, as thus suggested.

There was not in the case any question as to whether the appliances formed a part of the equipment of the car. The only sense in which it was possible for the jury to understand the word used was that of proper opportunity to alight. The instruction, as it necessarily would be understood, is well supported in all its parts by the decisions of this court and the Supreme Court. *Hall* v. *Terre Haute Electric Co.* (1906), 38 Ind. App. 43; *Wabash River Traction Co.* v. *Baker* (1906), 167 Ind. 262; *Indianapolis Traction, etc., Co.* v. *Klentschy* (1907), 167 Ind. 598; *Citizens St. R. Co.* v. *Jolly* (1903), 161 Ind. 80; *Citizens St. R. Co.* v. *Twiname* (1887), 111 Ind. 587; *Citizens St. R. Co.* v. *Merl* (1901), 26 Ind. App. 284; *Evansville, etc., R. Co.* v. *Mills* (1906), 37 Ind. App. 598; *Terre Haute Electric R. Co.* v. *Lauer* (1899), 21 Ind. App. 466; *Fort Wayne Traction Co.* v. *Hardendorf* (1905), 164 Ind. 403.

Judgment affirmed.